In the Matter of the Claim of MARIE JENSEN, Respondent,
*v.* SOUTHERN PACIFIC COMPANY, Appellant.

Workmen's Compensation Law — constitutionality — scope and application — when and to what extent applicable to interstate work and commerce — fatal injury to employee of a foreign railroad corporation owning and operating steamship engaged solely in interstate commerce.

1. The Workmen's Compensation Law (Cons. Laws, ch. 67; L. 1914, ch. 41) is not violative of the Fourteenth Amendment of the Constitution of the United States for taking property without due process of law, and under the amendment to the State Constitu-

tion, adopted November 4, 1913, and now section 19 of article 1 of such Constitution, it is a valid enactment within the police power of the state for the promotion of the general welfare. It protects both employer and employee, the former from wasteful suits and extravagant verdicts, the latter from the expense, uncertainties and delays of litigation in all cases and from the certainty of defeat if unable to establish a case of actionable negligence; it creates a fund for the payment of the compensation allowed for disability or death from accidental injuries sustained by employees engaged in certain enumerated hazardous employments, and distributes the burden thereof equitably over the business and industries affected.

2. The statute properly construed applies to accidental injuries received in interstate as well as intrastate work, except those injuries received while employed in interstate or foreign commerce, for which "a rule of liability or method of compensation has been or may be established by the Congress of the United States." Hence the statute is not violative of the Federal Constitution for attempting directly to regulate or impose a tax or burden on interstate or foreign commerce.

3. The fact that the statute deprives an employee, injured by negligence imputable to the employer, of a further right of action against his employer does not render the act unconstitutional. The act does not deal with intentional wrongs but only with accidental injuries for which a new remedy is substituted in place of the common-law right of action. The legislature has the power, in the promotion of the public welfare, to require both employer and employee to yield something toward the establishment of a principle and plan of compensation for their mutual protection and advantage, and it is certainly competent for the legislature to provide, by the creation of an insurance fund, for a limited compensation to the employee for all accidental injuries, regardless of whether there was a cause of action for them at common law.

4. An employee of a foreign railroad corporation, owning and operating a steamship engaged solely in interstate commerce, was killed by an accident while engaged in unloading the steamship, which was berthed alongside a pier in the Hudson river in the city of New York. Held, that the work in which he was engaged is classified as "Longshore work" in group 10 of section 2 of the statute, and, therefore, does not fall within group 8, which excepts injuries received in the operation of "vessels of other states or countries used in interstate or foreign commerce when operated or repaired by the company." Hence, the case is not covered by the Federal statute (Liability Act of April 22, 1908, 35 Stat. L. 65), and an award

made by the workmen's compensation commission to the widow of such employee should be affirmed. (*Noble State Bank* v. *Haskell*, 219 U. S. 104; *Ives* v. *South Buffalo Railway Co.*, 201 N. Y. 271, 294, distinguished.)

*Matter of Jensen* v. *Southern Pacific Co.*, 167 App. Div. 945, affirmed.

(Argued June 15, 1915; decided July 13, 1915.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered March 26, 1915, affirming an award of the state workmen's compensation commission.

The facts, so far as material, are stated in the opinion.

*Norman B. Beecher* and *Ray Rood Allen* for appellant. The Workmen's Compensation Law deprives the employer of property without due process of law, in violation of the Fourteenth Amendment of the Constitution of the United States. (*Ives* v. *South Buffalo Ry. Co.*, 201 N. Y. 271.) The Workmen's Compensation Law has no application where employer and employee are engaged wholly in interstate commerce. If held applicable, it is unconstitutional in that it imposes a burden upon interstate commerce. (*McCabe* v. *A., etc., Ry. Co.*, 235 U. S. 151; *Connole* v. *N. & W. Ry. Co.*, 216 Fed. Rep. 823; *G., H. & S. A. Ry. Co.* v. *Texas*, 210 U. S. 217; *P. & S. S. S. Co.* v. *Pennsylvania*, 122 U. S. 326; *S. R. Co.* v. *Cope*, 235 U. S. 197; *Adams Express Co.* v. *New York*, 232 U. S. 14.) Congress has established a rule of liability applicable in this case; the Workmen's Compensation Law has no application to this injury. (*The Passaic*, 190 Fed. Rep. 644; *Erie R. R. Co.* v. *Jacobus*, 221 Fed. Rep. 335; *Pederson* v. *D., L. & W. R. R. Co.*, 229 U. S. 146; *Barlow* v. *Lehigh V. R. R. Co.*, 214 N. Y. 116; *Schuede* v. *Zenith S. S. Co.*, 216 Fed. Rep. 566.) The act is not applicable because the claimant was engaged in the operation of a vessel of another state used

in interstate commerce. (*Pacific S. S. Co.* v. *Schmidt*, 214 Fed. Rep. 513; *The Strathnairn*, 190 Fed. Rep. 673.)

*William L. Visscher, Robert E. Whalen* and *H. Leroy Austin* for New York Central and Hudson River Railroad Company. The act entitled Workmen's Compensation Law (L. 1914, ch. 41) is unconstitutional, being in contravention of the provisions of the Fourteenth Amendment of the Federal Constitution. (*Ives* v. *South Buffalo Ry. Co.*, 201 N. Y. 271; *Jeffrey Mfg. Co.* v. *Blagg*, 235 U. S. 571; *Hotel Bond Co. Appeal*, 93 Atl. Rep. 245.) Under the Federal Employers' Liability Act, which alone measures claimant's right to a recovery, the employer is liable only for negligence, in the absence of which there is no liability whatever. (*Second Employers' Liability Cases*, 223 U. S. 1; *M. C. R. R. Co.* v. *Vreeland*, 227 U. S. 59; *St. L., I. M. & S. Ry. Co.* v. *Hesterly*, 228 U. S. 702; *S. L. & S. F. Ry. Co.* v. *Seale*, 229 U. S. 156; *N. C. R. R. Co.* v. *Zachary*, 232 U. S. 248; *Taylor* v. *Taylor*, 232 U. S. 363.)

*Egburt E. Woodbury, Attorney-General* (*E. C. Aiken* and *Harold J. Hinman* of counsel), for respondent. The Workmen's Compensation Law does not offend against the provisions of the Constitution of the United States. (*State ex rel. Davis-Smith Co.* v. *Clausen*, 117 Pac. Rep. 111; *Young* v. *Duncan*, 106 N. E. Rep. 1; *Jeffrey Mfg. Co.* v. *Blagg*, 235 U. S. 571; *Cunningham* v. *N. W. Imp. Co.*, 44 Mont. 108; *Memphis C. O. Co.* v. *Tolbert*, 171 S. W. Rep. 309; *Holden* v. *Hardy*, 169 U. S. 366; *Legal Tender Cases*, 12 Wall. 457; *Walker* v. *Sauvinet*, 92 U. S. 90; *A., T. & S. F. R. R. Co.* v. *Matthews*, 174 U. S. 96; *Bertholf* v. *O'Reilly*, 74 N. Y. 509.) The Workmen's Compensation Law was intended to apply to the accident and disability occurring to this longshoreman. (*Stoll* v. *P. C. S. S. Co.*, 205 Fed. Rep. 169; *Chiles* v. *C.*

& O. Ry. Co., 218 U. S. 71; *Cooley* v. *Port Wardens*, 12 How. [U. S.] 299; *Atlantic Transport Co.* v. *Imbrorek*, 234 U. S. 52.) The Workmen's Compensation Law is not in conflict with any legislation of Congress over interstate commerce, for none has been enacted, nor is it in conflict with the jurisdiction of the admiralty courts, for Congress has not yet made the jurisdiction of admiralty over torts on navigable waters exclusive of all actions by the states. (*The Lottawanna*, 21 Wall. 558; *Butler* v. *Boston Steamship Co.*, 130 U. S. 527; *Matter of Garnett*, 141 U. S. 1; *United States* v. *Bevans*, 3 Wheat. 336; *People* v. *Welch*, 141 N. Y. 266; *Manchester* v. *Massachusetts*, 139 U. S. 240; *McCready* v. *Virginia*, 94 U. S. 391; *The Abbey Dodge*, 223 U. S. 166; *Erie R. R. Co.* v. *Williams*, 233 U. S. 685; *The Moses Taylor*, 4 Wall. 411; *Hine* v. *Trevor*, 4 Wall. 555.) The Federal Employers' Liability Law does not apply to the defendant, as the defendant, so far as this case is concerned, is a steamship company and not a railroad company. (*Walker* v. *Clyde S. S. Co.*, 215 N. Y. 529.)

MILLER, J. The claimant's husband was killed on August 15th, 1914, while employed in unloading the steamship *El Oriente* which was berthed alongside a pier in the Hudson river. When the accident occurred he was moving an electric truck upon a gangway connecting the vessel with the pier. The appellant, a corporation of the state of Kentucky, is a common carrier by railroad. It also owned and operated said steamship, which plied between New York and Galveston, Texas. It does not appear that the steamship was in any way operated in connection with a line of railroad, and in its report of the accident the appellant stated its business to be " transportation by steamships engaged solely in interstate commerce." We are required on this appeal, first, to construe the Workmen's Compensation Law (Chap. 67 of the Consolidated Laws; L. 1914, ch. 41) in so far as it relates

to this case, and, second, to determine its constitutional validity. The scheme of the statute is essentially and fundamentally one by the creation of a state fund to insure the payment of a prescribed compensation based on earnings for disability or death from accidental injuries sustained by employees engaged in certain enumerated hazardous employments. The state fund is created from premiums paid by employers based on the payroll, the number of employees and the hazards of the employment. The employer has the option of insuring with any stock corporation or mutual association authorized to transact such business, or of furnishing satisfactory proof to the commission of his own financial ability to pay. If he does neither he is liable to a penalty equal to the *pro rata* premium payable to the state fund during the period of his non-compliance and is subject to a suit for damages by the injured employee, or his legal representative in case of death, in which he is deprived of the defenses of contributory negligence, assumed risk and negligence of a fellow-servant. By insuring in the state fund, or by himself or his insurance carrier paying the prescribed compensation, the employer is relieved from further liability for personal injuries or death sustained by employees. Compensation is to be made without regard to fault as a cause of the injury, except where it is occasioned by the willful intention of the injured employee to bring about the injury or death of himself or another or results solely from his intoxication while on duty. Compensation is not based on the rule of damages applied in negligence suits but in addition to providing for medical, surgical or. other attendance or treatment and funeral expenses it is based solely on loss of earning power. Thus the risk of accidental injuries occurring with or without fault on the part either of employee or employer is shared by both and the burden of making compensation is distributed over all the enumerated hazardous employments in proportion to the risks involved. So much for the general

outline of the scheme against whose justice or economic soundness nothing, that occurs to me, can be said.

The particular provisions requiring construction are the following:

" Section 2. *Application.* Compensation provided for in this chapter shall be payable for injuries sustained or death incurred by employees engaged in the following hazardous employments:   *   *   *

" Group 8. The operation, within or without the state, including repair, of vessels other than vessels of other states or countries used in interstate or foreign commerce, when operated or repaired by the company.   *   *   *

" Group 10. Longshore work, including the loading or unloading of cargoes or parts of cargoes of grain, coal, ore, freight, general merchandise, lumber or other products or materials, or moving or handling the same on any dock, platform or place, or in any warehouse or other place of storage."

" Section 114. *Interstate Commerce.* The provisions of this chapter shall apply to employers and employees engaged in intrastate, and also in interstate or foreign commerce, for whom a rule of liability or method of compensation has been or may be established by the congress of the United States, only to the extent that their mutual connection with intrastate work may and shall be clearly separable and distinguishable from interstate or foreign commerce, except that such employer and his employees working only in this state may, subject to the approval and in the manner provided by the commission and so far as not forbidden by any act of congress, accept and become bound by the provisions of this chapter in like manner and with the same effect in all respects as provided herein for other employers and their employees."

It is claimed that loading and unloading are included in " operation " and that, therefore, the case falls within group 8, which excepts vessels of other states or countries used in interstate or foreign commerce, but the specific

enumeration of longshore work in group 10 excludes such work from the other group.

It is next claimed that the statute was not intended to apply to employment in interstate or foreign commerce and that in case of doubt that construction should be adopted, for otherwise it would offend against the commerce clause of the Federal Constitution by imposing a burden upon such commerce. The latter claim will be noticed first. The statute does not purport directly to regulate or impose a burden upon commerce, but merely undertakes to regulate the relations between employers and employees in this state. Such regulation may, and no doubt does, indirectly affect commerce, but to the extent that it may affect interstate or foreign commerce it is plainly within the jurisdiction of the state, until congress by entering the field excludes state action. (*Sherlock* v. *Alling*, 93 U. S. 99; *Morgan's Steamship Co.* v. *Louisiana*, 118 U. S. 455; *Reid* v. *Colorado*, 187 U. S. 137; *Simpson* v. *Shepard*, 230 U. S. 352; *Erie R. R. Co.* v. *Williams*, 233 U. S. 685.)

Literally construed, section 114 makes the statute apply only to intrastate work, either done by itself or in connection with, but clearly separable and distinguishable from, interstate or foreign commerce. But, though the section is awkwardly phrased, it is manifest that a broader application was intended, else the clause "for whom a rule of liability or method of compensation has been or may be established by the congress of the United States" is meaningless. The legislature evidently intended to regulate, as far as it had the power, all employments within the state of the kinds enumerated. The earlier sections are in terms of general application, and section 114, which is headed "Interstate Commerce," is one of limitation, not of definition. Its obvious purpose was to guard against a construction violative of the Constitution of the United States, and so it provided that the act should apply to interstate or foreign commerce, "for

whom a rule of liability or method of compensation has been or may be established by the congress of the United States," only to the extent that intrastate work affected may or shall be clearly separable or distinguishable therefrom.   In other words, the legislature said that it did not intend to enter any field from which it had been or should be excluded by the action of the congress of the United States.   But it is said that congress may at any time regulate employments in interstate or foreign commerce, and that the case is one in which a rule "may be established," etc.   Again, the spirit, not the letter, must control.   If it had been intended to confine the application of the act to intrastate work, the legislature would doubtless have said so in a sentence.   The words "may be" should be construed in the sense of "shall be."

One other question in respect of the application of the act remains to be considered.   It is said that the ·appellant is a carrier by railroad, and that, therefore, the Federal Employers' Liability Act of April 22, 1908 (35 Stat. L. 65), prescribes the rule governing the employment in which the deceased was engaged.   As far as this case is concerned the appellant is a carrier by water.   Its business is transportation by steamships, which, as far as appears, may not even indirectly be related to transportation by railroad, certainly not by any particular line of railroad.   It is significant that the earlier Federal statute of June 11, 1906 (34 Stat. L. 232), applied to "every common carrier" engaged in interstate or foreign .commerce, whilst the present act applies only to carriers by railroad.   There is nothing in the act indicative of a purpose to apply it to carriage by water, if it happen to be conducted by a railroad corporation, and not otherwise — to apply one rule of liability to transportation by a steamship line, if owned and operated by a railroad corporation, and a different rule to precisely similar transportation not thus controlled.   The Federal act provides a rule of liability of carriers by railroad for injury

or death "resulting in whole or in part * * * by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment." The words "boats" and "wharves" may be given due effect by applying them to adjuncts or auxiliaries to transportation by railroad.

Our conclusion, therefore, is that the employment in which the deceased was engaged was not governed by the Federal statute, that the Workmen's Compensation Act applied to it, and that the latter act is not violative of the Federal Constitution for attempting directly to regulate or impose a tax or burden on interstate or foreign commerce. We now come to perhaps the most important question in the case. Does the act violate the Fourteenth Amendment to the Constitution of the United States for taking property without due process of law?

Much reliance is placed on the decision of this court in *Ives* v. *South Buffalo Ry. Co.* (201 N. Y. 271, 294). In that case Judge WERNER, referring to the appeal on economic and sociologic grounds and speaking for the court, said: "We have already admitted the strength of this appeal to a recognized and widely prevalent sentiment, but we think it is an appeal which must be made to the people and not to the courts." That decision was made in March, 1911. Following that suggestion, the legislature provided in the orderly way prescribed by the Constitution for the submission to the people of a proposed constitutional amendment and in due time that amendment was adopted on November 4th, 1913, and became section 19 of article 1 of our State Constitution. It is unnecessary to set that amendment forth *in extenso*, but it suffices to say that so far as the due process clause or any other provision of our State Constitution is concerned the amendment amply sustains the act. However, it is urged that the reasons which constrained the court to declare the act involved in the *Ives* case unconstitutional are equally cogent when

applied to the Fourteenth Amendment. In the first place it is to be observed that the two acts are essentially and fundamentally different. That involved in the *Ives* case made the employer liable in a suit for damages though without even imputable fault and regardless of the fault of the injured employee short of serious and willful misconduct. This act protects both employer and employee, the former from wasteful suits and extravagant verdicts, the latter from the expense, uncertainties and delays of litigation in all cases and from the certainty of defeat if unable to establish a case of actionable negligence. Both acts are said to have been based on the proposition that the risk of accidental injuries in a hazardous employment should be borne by the business and that loss should not fall on the injured employee and his dependents, who are unable to bear it or to protect themselves against it. That act made no attempt to distribute the burden, but subjected the employer to a suit for damages. This act does in fact as well as in theory distribute the burden equitably over the industries affected. It allows compensation only for loss of earning power, but by the creation of a state insurance fund, or by the substitute methods provided, it insures the prompt receipt by the injured employee or his dependents of a certain sum undiminished by the expenses of litigation. The two acts are, therefore, so plainly dissimilar that the decision in the *Ives* case is not controlling in this.

Moreover, upon the question whether an act offends against the Constitution of the United States the decisions of the United States Supreme Court are controlling. The only one of the numerous Workmen's Compensation Acts which appears to have been directly passed on by the United States Supreme Court is the act of Ohio, which contained an optional clause. (*Jeffrey Mfg. Co.* v. *Blagg*, 235 U. S. 571.) The single question decided in that case was that limiting the application of the act to shops with

five or more employees did not result in arbitrary and
unreasonable classification.   This act is compulsory.   The
employer is subjected to a penalty for not adopting one of
the three methods of insurance allowed him, and the
employee has no choice at all except possibly as to whether
he will enter one of the classified employments.   How-
ever, except for a feature presently to be considered, the
decision in *Noble State Bank* v. *Haskell* (219 U. S. 104)
is decisive.   Indeed, upon close analysis it will appear
that the taking justified in that case as a proper exercise
of the police power was no more in the public interest
than that involved in this case and that the mutual
benefits to the parties immediately concerned were not as
direct.   In that case an act of the state of Oklahoma
requiring every bank existing under the state laws to pay
an assessment based on average daily deposits into a guar-
anty fund to secure the full repayment of deposits in case
any such bank became insolvent was sustained not
merely under the reserve power of the state to alter or
repeal charters but as a proper exercise of the police
power.   Solvent banks were thus required to pay money
into a fund for the direct benefit of others, the banks
benefiting only indirectly from the supposed benefit to
commerce and the greater stability of banking.   In this
case the mutual benefits are direct.   Granted, that
employers are compelled to insure and that there is in
that sense a taking.   They insure themselves and their
employees from loss, not others.   The payment of the
required premiums exempts them from further liability.
The theoretical taking no doubt disappears in practical
experience.   As a matter of fact every industrial con-
cern, except the very large ones who insure themselves,
have for some time been forced by conditions, not by law,
to carry accident indemnity insurance.   A relatively
small part of the sums thus paid actually reached injured
workmen or their dependents.   With the economic sav-
ing of the present scheme, insurance in the long run

should certainly be as cheap as under the old wasteful plan, and the families of all injured workmen, not a part only, will receive some compensation for the loss of earning power of the wage earner. We should consider practical experience as well as theory in deciding whether a given plan in fact constitutes a taking of property in violation of the Constitution. A compulsory scheme of insurance to secure injured workmen in hazardous employments and their dependents from becoming objects of charity certainly promotes the public welfare as directly as does an insurance of bank depositors from loss.

But for the matter now to be considered we need not look farther for a case controlling upon us and in principle decisive of this. Whilst the *Noble State Bank* case was referred to in the *Ives* case, it was not controlling for the reason that the State Constitution was involved and it was not in point as an authority because of the essential differences in the act then before the court, already pointed out.

A point was made on oral argument that the act was unconstitutional for depriving an employee injured by negligence imputable to the employer of a right of action for the wrong. Of course, the employer cannot be heard to urge the grievance of the employee (*Jeffrey Mfg. Co. v. Blagg, supra*), but exemption from further liability upon paying the required premium into the state fund is an essential element of the scheme, and if the act be unconstitutional as to the employee the employer would be deprived of that exemption and thus would be directly affected by the unconstitutionality of the act in that respect. It is not accurate to say that the employee is deprived of all remedy for a wrongful injury. He is given a remedy. To be sure, the compensation or recovery is limited, and that in a sense may possibly constitute a taking; but if so, it is his contribution to an insurance scheme designed for his benefit, and may be justified on precisely the same grounds as the contribution exacted of

the employer has been. When he enters into the contract of employment, he is now assured of a definite compensation for an accidental injury occurring with or without fault imputable to the employer and is afforded a remedy, which is prompt, certain and inexpensive. In return for those benefits he is required to give up the doubtful privilege of having a jury assess his damages, a considerable part of which, if recovered at all after long delay, must go to pay expenses and lawyers' fees.

Moreover, the act does not deal with intentional wrongs but only with accidental injuries, and no account is taken of the presence or absence of negligence attributable to the employer. In the way modern undertakings are conducted it is rarely possible to trace personal fault to the employer, but he has been held liable for wrongs of others under the doctrine of *respondeat superior*. That doctrine has been developed by the courts to make the principal accountable for the conduct of his affairs, though it must be remembered that it does not rest on the doctrine of agency. No one has a vested right under the Constitution to the maintenance of that common-law doctrine, which undoubtedly may be extended or curtailed by the legislature. No one doubts that the doctrine of assumption of risk and the fellow-servant doctrine, also developed by the courts under different conditions than those now prevailing, may be limited or entirely abrogated by the legislature. Acts having that effect have been sustained by repeated decisions of this court. The power to limit or take away must also involve the power to extend. At the common law the servant was held to assume by implied contract the ordinary risks of the employment, including the risk of a fellow-servant's negligence, and even of negligence imputable to the master if the danger was obvious, or with knowledge of it the servant voluntarily continued in the employment. It would not be a great extension of that doctrine for the legislature to provide that the

employee should assume the risk of all accidental injuries, and if that can be done, it is certainly competent for the legislature to provide by the creation of an insurance fund for a limited compensation to the employee for all accidental injuries, regardless of whether there was a cause of action for them at common law.

This subject should be viewed in the light of modern conditions, not those under which the common-law doctrines were developed. With the change in industrial conditions, an opinion has gradually developed, which almost universally favors a more just and economical system of providing compensation for accidental injuries to employees as a substitute for wasteful and protracted damage suits, usually unjust in their results either to the employer or the employee, and sometimes to both. Surely it is competent for the state in the promotion of the general welfare to require both employer and employee to yield something toward the establishment of a principle and plan of compensation for their mutual protection and advantage. Any plan devised by the wit of man may in exceptional cases work unjustly, but the act is to be judged by its general plan and scope and the general good to be promoted by it. Fortunately the courts have not attempted to define the limits of the police power. Its elasticity makes progress possible under a written constitution guaranteeing individual rights. The question is often one of degree. The act now before us seems to be fundamentally fair to both employer and employee. Of course, I do not speak of details, which may or may not be open to criticism, but which, granting the validity of the underlying principle, are plainly within the province of the legislature. It is not open to the objections found to be fatal to the act considered in the *Ives* case. It is plainly justified by the amendment to our own State Constitution and the decisions of the United States Supreme Court, notably in the *Noble State Bank* case, make it reasonably certain that it will be found by that

court not to be violative of the Constitution of the United States.

The order of the Appellate Division should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., COLLIN, CUDDEBACK, CARDOZO and SEABURY, JJ., concur; WERNER, J., not sitting.

Order affirmed.