The claimant was employed in connection with the general repair and maintenance of the tracks of the employer, the New York Central and Hudson River Railroad Company. While tamping ties he was struck in the right eye by a stone which came up from the ground. The workmen's compensation commission awarded him compensation at the rate of $6.54 weekly for two weeks. The claimant's employer at the time of the accident was engaged in interstate commerce. The appellant contends that because the claimant when injured was employed by a railroad company which was then engaged in interstate commerce, the Federal Employers' Liability Act alone measures the claimant's right to recover, and as there can be no recovery under that act, because the injury to the claimant was not the result of negligence, the claimant is remediless. This appeal makes it necessary for us to determine whether this contention is correct. The question presented has not as yet been determined by any decision of *Page 287 
the Supreme Court of the United States or of this court. In the absence of controlling precedent we must endeavor to reach a conclusion which shall be in accord with the established principles which underlie our dual system of government. The Federal Constitution in express terms grants to Congress jurisdiction over interstate commerce. The exercise by Congress of a power granted to it by express terms supersedes all legislation on the same subject by the states. In the exercise of the power so conferred Congress has prescribed the liability of carriers, for injuries resulting from negligence, to their employees while engaged in interstate commerce. (35 U.S. Stat. 65.) The Federal Employers' Liability Act is, therefore, in so far as it attempts to prescribe the rules of liability for injuries resulting from negligence, paramount and exclusive and must so continue until Congress shall see fit to remit the subject to the reserved police powers of the state. These general principles have been so often enunciated by the Supreme Court of the United States that they are now no longer open to dispute. (Second Employers' Liability Cases, 223 U.S. 1; Adams ExpressCo. v. Croninger, 226 U.S. 491; Northern Pacific Ry. Co. v.Washington, 222 U.S. 370; Erie R.R. Co. v. New York,233 U.S. 671; Morgan's S.S. Co. v. Louisiana, 118 U.S. 455, 464;Hennington v. Georgia, 163 U.S. 299; Rasmussen v. Idaho,181 U.S. 198.) Another principle which has been enunciated with the same clearness, is that when the Federal and state governments have jurisdiction to enter the same sphere the state may legislate upon matters within that sphere until such time as Congress shall prescribe regulations upon the same subject. (Sinnot v. Davenport, 22 How. (U.S.) 227, 243; Ex parteMcNeil, 80 U.S. (13 Wall.) 236; Smith v. Alabama,124 U.S. 465; Gulf, Colorado Santa Fe Ry. Co. v. Hefley,158 U.S. 98; Mo., Kans. Tex. Ry. Co. v. Haber, 169 U.S. 613; Olsen
v. Smith, 195 U.S. 332; Reid v. Colorado, 187 U.S. 137.) In the *Page 288 
light of these principles let us examine the Federal Employers' Liability Act and the Workmen's Compensation Law of this state and endeavor to ascertain whether they assume to deal with the same subject-matter. If upon examination it is found that they do, then in so far as employers and employees are engaged in interstate commerce, the provisions of the Federal statute must be regarded as paramount and exclusively operative. If upon examination it is found that these two statutes do not cover the same subject-matter we will be in a position to distinguish the different spheres within which each may be given effect. A recognition of the principles upon which the Federal and state statutes are founded will demonstrate that they are not in parimateria. The Federal Employers' Liability Act prescribes the rules under which certain employers are liable to their employees for injuries which result to the latter from negligence. The Workmen's Compensation Law is radically different in principle, purpose, scope and method from the Federal Employers' Liability Act. It inaugurated an entirely new method of dealing with industrial accidents. Under its provisions compensation paid to the employee under the state statute is the result of injury arising in the course of employment and is paid regardless of fault or contract. The principle underlying the state statute is that as injuries to workmen are necessarily incident to the operation of certain hazardous occupations, the expense of compensating the employees for such injuries is properly chargeable upon the occupation. The purpose of this act was to establish an insurance fund to which employers are required to contribute, out of which fund compensation to the workmen is paid and contribution to which by the employer relieves him of further liability. The scope of the act is much broader than the Federal Employers' Liability Act, because under its provisions the employee is awarded compensation for all accidental injuries arising in the course of his employment *Page 289 
whether they result from negligence or not, which are not self-inflicted or sustained as the result of intoxication. Themethod by which compensation is given to the employee is different from the method by which redress may be secured in an action brought under the provisions of the Federal Employers' Liability Act. Under the state statute the injured employee presents his claim to an administrative board or commission. Notice is given to the parties interested. The proceedings are informal. The compensation awarded the employee is not such as is recoverable under the rules of damages applicable in actions founded upon negligence. It is based on loss of earning power and compensation for medical, surgical or other attendance or treatment or funeral expenses. Perhaps, without inaccuracy, it may be said that the primary purpose of this act was to give compensation in those cases where no claim of negligence on the part of the employer could reasonably be made. Having in mind the different principles which underlie the two statutes, the different purposes sought to be accomplished by them, the restricted scope of the Federal statute and the broad scope of the state statute and the different method by which redress is obtained under these statutes, can they reasonably be said to cover the same subject-matter? We are of the opinion that they cannot be so regarded. We think it is evident, also, that Congress has recognized the difference between these two kinds
of statutes. In enacting the Federal Employers' Liability Act it intended to occupy and exclusively pre-empt the field in which the liability of certain employers engaged in interstate commerce to their employees is prescribed when the latter were injured as the result of negligence. It did not intend to enter upon the field of compensation for industrial accidents which were not the result of negligence, but left that field open for occupancy by the state until such time as it should assume to legislate upon this subject. The view that Congress intended to observe the *Page 290 
distinction between the two kinds of statutes referred to, is fortified by the fact that it has passed a workmen's compensation law exclusively applicable to Federal employees in which liability is not made to depend either upon fault or contract (35 U.S. Stat. 556), whereas, as to certain private employments it has regulated the subject only in those cases where the employee is injured as the result of negligence (35 U.S. Stat. 65). The workmen's compensation statute of this state was not in any way designed to conflict with the authority of Congress over interstate commerce. As was said by this court in Matter ofJensen (215 N.Y. 514, 521): "Its obvious purpose was to guard against a construction violative of the Constitution of the United States." It is true, of course, that the act is to be judged not only by its purpose but by what it provides may be done under it. Even considering it in the light of this principle, we think that it may lawfully be held to cover such a case as the present without in any way trespassing upon the field of Federal jurisdiction. As yet, as to private employments, Congress has not assumed to make any provision as to compensation for accidents not the result of negligence, and Congress not having entered upon this field the state may lawfully do so, until such time as Congress shall assume to exercise its power over this subject. The moment Congress shall enter upon this field all state regulations upon the subject will be abrogated. The field which Congress has preempted by the enactment of the Federal Employers' Liability Act is far removed from that of awarding compensation for industrial accidents that are not the result of negligence. Moreover, the present Workmen's Compensation Law was deemed a necessary exercise by the state under modern industrial conditions of its police power. (Matterof Jensen, supra.) The means that have been employed do not go beyond the necessities of the case or impose any unreasonable condition upon interstate commerce. The state has not assumed to supplement *Page 291 
the action of Congress. It has legislated in a sphere into which as yet, Congress has not assumed to enter. When Congress shall manifest a purpose to enter this field there can be no division of the field of regulation. When the Federal and state statutes relate to the same subject-matter and prescribe different rules, the state statute must yield. When, as in the case under consideration, the Federal and state statutes do not relate to the same subject-matter, the fact that Congress, when it so desires, may pre-empt the field does not render the state statute inoperative until such time as Congress assumes to exercise the power. "It is the exercise, and not the existence, of the power that is effectual and exclusive." (Ex parte McNeil, 80 U.S. [13 Wall.] 236, 240.) It was well said by Mr. Justice HARLAN inReid v. Colorado (187 U.S. 137, 148): "It should never be held that Congress intends to supersede or by its legislation suspend the exercise of the police powers of the states, even when it may do so, unless its purpose to effect that result is clearly manifested." In Missouri, Kansas Texas RailwayCompany v. Haber (169 U.S. 613 at p. 623) it was said by the same learned justice: "May not these statutory provisions stand without obstructing or embarrassing the execution of the act of Congress? This question must of course be determined with reference to the settled rule that a statute enacted in execution of a reserve power of the state is not to be regarded as inconsistent with an act of Congress passed in the execution of a clear power under the Constitution, unless the repugnance or conflict is so direct and positive that the two acts cannot be reconciled or stand together." (See, also, Smith v. Alabama,124 U.S. 465.) In Olsen v. Smith (195 U.S. 332) it was held that state laws regulating pilotage, although regulative of commerce, fall within that class of powers which may be exercised by the state until Congress has seen fit to act upon the subject. In Reid v. Colorado (supra) the court asserted that when *Page 292 
the entire subject of the transportation of live stock from one state to another is taken under direct national supervision and a system devised by which diseased stock may be excluded from interstate commerce, all local or state regulations in respect to such matter and covering the same ground would cease to have any force whether formerly abrogated or not. The court, however, held that the act of Congress (23 U.S. Stat. ch. 60) known as the Animal Industry Act did not cover the whole subject of the transportation of live stock from one state to another and that, therefore, the state may protect its people and their property against such dangers. That case considered the question whether a statute of the state of Colorado was in violation of the Constitution of the United States or in conflict with the power of Congress over interstate commerce. In rendering the opinion of the court Mr. Justice HARLAN said: "But the difficulty with the defendant's case is that Congress has not by any statute covered the whole subject of the transportation of live stock among the several states, and, except in certain particulars not involving the present issue, has left a wide field for the exercise by the states of their power, by appropriate regulations, to protect their domestic animals against contagious, infectious and communicable diseases. [At page 147.] * * * The state — Congress not having assumed charge of the matter as involved in interstate commerce — may protect its people and their property against such dangers, taking care always that the means employed to that end do not go beyond the necessities of the case or unreasonably burden the exercise of privileges secured by the Constitution of the United States." (At page 151.) In Erie Railroad Co. v. NewYork (233 U.S. 671) the United States Supreme Court had under review a state and Federal statute both of which assumed to prescribe the hours of service for certain operatives engaged in interstate commerce. The state statute assumed to supplement the Federal statute *Page 293 
and to legislate upon the same subject-matter and the court held that the act of Congress was paramount and that the state statute must yield to it.
The state in the Workmen's Compensation Law has assumed to deal with all industrial accidents whether they be the result of negligence or not. The suggestion is made that in so doing the state has required employers to contribute to an insurance fund upon the assurance that such contribution relieves them of all further liability and yet so far as accidents resulting from negligence occur to those engaged in interstate commerce, the employer may still be subject to a liability under the provisions of the Federal Employers' Liability Act. This apparent difficulty disappears when we distinguish between the different spheres in which the Federal and state statutes operate. So far as accidents result to those engaged in interstate commerce, the whole subject is, when Congress assumes to deal with it, excluded from the operation of state regulation. As to accidents to those engaged in interstate commerce resulting from negligence, which are within the Federal Employers' Liability Act, Congress has
assumed to deal with the subject, and, therefore, all state regulations within that sphere must be inoperative. In so far as the separate and distinct field of compulsory insurance against accidents, not the result of negligence by the employers, is concerned, Congress has not assumed to act upon the subject, and until such time as Congress does enter this distinct and separate field, it is open to occupancy by the state, provided only that in occupying it the state does not go beyond the necessities of the case, or unreasonably burden the exercise of the privileges secured by the Constitution of the United States. While it is true that our state statute in terms is broad enough to cover accidental injuries caused by negligence, and those that are not caused by negligence, that portion of it which affects accidental injuries caused by negligence resulting to *Page 294 
those engaged in interstate commerce, which are within the Federal Employers' Liability Act, is as ineffective and inoperative as if it had not been enacted. The legislature intended that injuries resulting from negligence to those engaged in interstate commerce, which are within the Federal statute, should not be affected by the provisions of the state statute. This is evident from the provisions of section 114 of the Workmen's Compensation Law (Cons. Laws, ch. 67; L. 1914, ch. 41). That section provides as follows:
"Interstate Commerce. The provisions of this chapter shall apply to employers and employees engaged in intrastate, and also in interstate or foreign commerce, for whom a rule of liability or method of compensation has been or may be established by the Congress of the United States, only to the extent that their mutual connection with intrastate work may and shall be clearly separable and distinguishable from interstate or foreign commerce, except that such employer and his employees working only in this state may, subject to the approval and in the manner provided by the commission and so far as not forbidden by any act of Congress, accept and become bound by the provisions of this chapter in like manner and with the same effect in all respects as provided herein for other employers and their employees."
In Matter of Jensen (supra) this court pointed out that literally construed, section 114 "makes the statute apply only to intrastate work, either done by itself or in connection with, but clearly separable and distinguishable from, interstate and foreign commerce." The court then remarked that "though the section is awkwardly phrased, it is manifest that a broader application was intended." (p. 521.) Thus viewing the matter, we held in that case that the provisions of the state statute applied to accidental injuries received in interstate as well as intrastate work except those injuries received while engaged in interstate or foreign commerce for which "a rule of liability *Page 295 
or method of compensation has been or shall be established by the Congress of the United States." Writing for the court in that case Judge MILLER, referring to the statute, said: "In other words, the legislature said that it did not intend to enter any field from which it had been or should be excluded by the action of the Congress of the United States. But it is said that Congress may at any time regulate employments in interstate or foreign commerce, and that the case is one in which a rule `may be established,' etc. Again, the spirit, not the letter, must control. If it had been intended to confine the application of the act to intrastate work, the legislature would doubtless have said so in a sentence. The words `may be' should be construed in the sense of `shall be.'" (p. 522.) Moreover in the last sentence of section 114 it is made clear that the act applies to employers and employees working only in the state, "subject to the approval and in the manner provided by the commission and so far as notforbidden by any act of Congress." In so far as employers and employees working in this state are engaged in interstate commerce and injuries result to the employees which are not the result of negligence and are not occasioned by the willful intention of the injured employee to bring about the injury or death of himself or another or result from his intoxication while on duty, Congress not having legislated upon the subject, the state statute is operative. The insurance fund created by the state statute is not for the benefit of those who are within the Federal statute. Nor does the state statute assume to release employers who contribute to the insurance fund from liability imposed by the Federal statute. In all such cases the state statute imposes no liability and does not relieve from liability for such accidents. All accidents of that character are governed by the Federal Employers' Liability Act. In regard to such accidents it is not within the jurisdiction of the state either to create a liability or to relieve from it. The contribution which the employer *Page 296 
makes to the insurance fund under the state statute relieves him of liability to his employees in cases which are not within the Federal statute. But accidents, resulting from negligence to those engaged in interstate commerce, which are within the Federal statute, are now exclusively within the sphere of Federal jurisdiction and as to them the state cannot create or take away liability. It is also urged that the state statute imposes inevitable liability upon the employer and sanctions in some cases a two-fold recovery. If a claim is made under the state statute against an employer and the employer pleads that the employee was injured in interstate commerce as a result of the employer's negligence the question will be presented whether the employer shall be permitted to urge his negligence to defeat the claim of his employee. That question is not now presented and we think discussion of it should be reserved until it arises. This much, however, without impropriety may be said, if the claim of the employer that the injury was the result of his negligence should be upheld, and the case should be within the Federal statute, the employer would not be subjected to a double recovery, because in this event there could be no recovery under the state statute. If the injury was not the result of negligence an award under the state statute could be made, but in such cases there could be no recovery under the Federal Employers' Liability Act and hence the employer could not be subjected to a double recovery.
The other questions urged upon us by the appellant have already been discussed in Matter of Jensen (supra) and do not require further discussion by us.
It follows that the order of the Appellate Division should be affirmed, with costs.
CHASE, CUDDEBACK, HOGAN and CARDOZO, JJ., concur; HISCOCK, J., not voting; WILLARD BARTLETT, Ch. J., absent.
Order affirmed. *Page 297