Johnson, J.
The question presented is, Was the plaintiff entitled to maintain his action for negligence against the defendant, on the grounds set forth in the petition, notwithstanding the fact that the defendant had complied with the provisions of the Workmen’s Compensation Act, as an employer of five or more men regularly in its business, and had paid the required premiums into the state insurance fund?
The act was compulsory on employers, and was passed pursuant to the grant of power contained in Section 35 of Article II of the Constitution adopted in September, 1912, the pertinent portion of which is as follows: “For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen’s employment, laws may be passéd establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state determining the terms and conditions upon which payment shall be made therefrom, and taking away any or all rights of action or defenses from employes and employers; but no right of action shall be taken away from any employe when the injury, disease or death arises from failure of the employer to comply with any lawful requirement for the protection of the lives, health and safety of employes.”
It is evident that the paramount purpose of this constitutional amendment was to give authority to the legislature to pass a compulsory act for the establishment of a state insurance fund to be admin *311 istered by the state, to which employers should be compelled to contribute; and also to take away any or all rights of action or defenses from- employes or employers, with the exception that “no right of action shall be taken away from any employe when the injury, disease or death arises from failure of the employer to comply with any lawful requirement for the protection of the lives, health and safety of employes.” Defendant in error contends that the cause of action set out in his petition is preserved to him by the exception stated, and cannot be taken away.
What is the meaning of the term “lawful requirement” as used in the amendment? Does it comprehend every duty which an employer is under to protect the lives, health and safety of his employes, whether the duty arose because of common-law principles or because of a requirement imposed by some legal authority? What was the meaning which the constitutional convention intended should be given to this term “lawful requirement?”
One of the well-settled rules to be followed in the interpretation of an amendment such as here involved is that the body adopting the amendment will be presumed to have had in mind existing statutes, and their judicial construction, touching the subjects dealt with; and courts will view and interpret the words used as they were used and interpreted in the situation existing at the time of the amendment. At the time this amendment was adopted by the convention in May, 1912, the act of May 31, 1911 (which was the original Workmen’s Compensation Law), was in force. Its validity had *312 been upheld by this court in February, 1912, in the case of The State, ex rel. Yaple, v. Creamer, Treas., 85 Ohio St., 349.
It yras provided by Section 21-2 of that act that where a personal injury was suffered by an employe, or when death resulted to an employe from personal injuries while in the employ of an employer in the course of employment, and such employer had paid into the state insurance fund the premium provided in the act, and in case such injury had arisen from the wilful act of such employer or any of the employer’s officers or agents or from the failure of such employer or his agents to comply with any municipal ordinance or lawful order of any duly authorized officer, or any statute for the protection of the life or safety of employes, then in such event nothing in the act contained should affect the civil liability of such employer. It will be observed that in the original act the elements which should constitute lawful requirements for the protection of the life or safety of employes were specifically enumerated.
In reference to the provision just referred to, it is said in The State, ex rel. Yaple, v. Creamer, Treas., supra, at page 393: “Under Section 21-2 if the parties are operating under the act and the employe is injured or killed, and the injury arose from the wilful act of his employer, his officer or agent, or from failure of the employer or agent to comply with legal requirements, as to safety of employes, then the injured employe or his legal representative has his option to claim under the act or sue in court for damages.”
*313 In view of this condition and history it would seem to be clear that when the constitutional convention-had Section 35, Article II, under consideration, which should confer power on the legislature to take away any or all rights of action or defenses from employes or employers, it was following the legislative policy of the state as theretofore declared and as at that time being enforced, and that it intended to include in such provision the exception that no right of action should be taken away from an employe when the injury arose from the wilful acts of his employer, or from his failure to comply with lawful requirements for the protection of employes, as defined by the compensation law then in force; and, further, that the convention adopted a phrase which should comprehend the enumerated elements of lawful requirements found in that law, the phrase being substantially the one used by the court.
Let us view Section 35 from another angle. It is elementary that, if possible, in construing such an instrument as here being examined, effect should be given to every part and every word, and that in the absence of a clear reason to the contrary no part of a provision should be treated as superfluous. The court will avoid any construction which renders a provision meaningless or inoperative. Not only this, but in construing a particular phrase reference should be had to other provisions in the same section in order to ascertain the intention of the enacting body. If the failure to comply “with a lawful requirement” includes an act which was actionable negligence simply because of the rules *314 of common law, then the portion of the section which authorizes the taking away of any or all rights of action or defenses of employes and employers would be practically meaningless and inoperative. We should be holding that embodied in the same section was power to take away all rights of actions or defenses of employes and employers, and also a practical denial of power to take away any right of action.
As already stated, the legislature, pursuant to Section 35, Article II of the Constitution, passed a compulsory act, 103 Ohio Laws, 72. In this act the legislature took away the right of action -of the employe where the employer had paid the premium into the state insurance fund. By Section 23 of the act it is provided that employers who comply shall not be liable to respond in damages at common .law, or by statute, save as hereinafter provided, etc., and by Section 29 it is provided that when an employe of an employer who has paid into the state insurance fund the premium provided for in the act is injured in the course of his employment, and such injury has arisen from the wilful act of such employer, or from his failure to comply with anv lawful requirement for the protection of the lives and safety of employes, then in such event nothing in the act contained shall affect the civil liability of such employer. Section 29 is a substantial reenactment of Section 21-2 of the original law (102 O. L., 524), except that it adopts the phrase used by the constitutional convention in Section 35, Article II, which condensed and comprehended the elements of lawful requirements which were enum *315 erated in the original act. Section 29 was amended in 104 Ohio Laws, 193, so as to provide that the term “wilful act” shall be construed to mean an “act done knowingly and purposely with the direct object of injuring another.”
Here again we meet a distinct conflict between different provisions in the same section, if the construction above referred to be correct. We have a provision preserving to the employe the right to sue his employer for an injury which has arisen from the wilful act of the employer, provided the wilful act was “done knowingly and purposely with the direct object of injuring him,” while in the same sentence we have a provision that the employe may sue his employer for simple negligence in failing to provide for his safety, as such negligence might be ascertained and fixed by the rules of the common law, and without reference to whether it was wilful or unintentional — such as the falling of the lumber alleged to be negligently piled in this case.
We think it clear that no such result was intended in the adoption of the amendment to the constitution referred to.
But it is vigorously insisted by counsel for defendant in error that even if the view of the intent and meaning of Section 35, Article II of the Constitution, and of the provisions of the Workmen’s Compensation Act, which we have indicated, is correct, still the provisions of Sections 15 and 16 of the Industrial Commission Act, passed March 12, 1913 (103 O. L., 95), raise a different rule of liability between the employer and employe than that *316 provided for by the compensation act, and constitute “lawful requirements,” for the violation of any of which the employe is entitled to maintain his action. Of course if there is in those sections, or in any legislative act, a lawful requirement within the meaning of Section 35, Article II of the Constitution, the employe’s right of action for its violation is preserved by that provision.
The Industrial Commission Act was passed at the same session of the legislature at which the Workmen’s Compensation Act was passed, and less than a month later, March 12, 1913, 103 O. L., 95.
In obedience to constitutional requirement its subject is clearly expressed in its title, viz.: “An act creating the industrial commission of Ohio, superseding the state liability board of awards, abolishing the departments of commissioner of labor statistics, chief inspector of mines, chief inspector of workshops and factories, chief examiner of steam engineers, board of boilers rules and state board of arbitration and conciliation, merging certain powers and duties of said departments in and transferring certain powers and duties of said departments to said industrial commission of Ohio, and granting such commission certain other powers,” etc.
It is clear that the purpose of this enactment was to create one single administrative board, which should perform the duties of the different officers and boards referred to. By Section 12 of the act it is provided that all of the duties of the state liability board of awards shall be performed by the *317 industrial commission. Like provisions are contained in the act with reference to all of the other boards and officers named.
There is nothing in the Industrial Commission Act which indicates an intention of the legislature to enlarge or diminish the rights of employes and employers under the compensation act, which had then recently been passed. The Industrial Commission Act provided for an administrative agency with power to supervise all places of employment, to prescribe general rules concerning all employments, and particular directions and orders to particular employers and places of employment, in order that watch might be constantly kept of developing and changing conditions dictated by invention and progress in the industries of the state, and in order to secure the largest practicable degree of safety for employes and the public. Having passed out of the simple conditions of earlier times, government has been forced to meet the difficulties of new situations by the delegation of powers to agencies created by and controlled by the state.
Section 13 of the Industrial Commission Act defines the terms which are used in other sections and provisions of the act, and in paragraph 11 it is provided that “The terms 'safe,’ and 'safety,’ as applied to any employment or a place of employment shall mean such freedom from, danger to the life, health, safety or welfare of employes or frequenters as the nature of the employment will reasonably permit, including requirements as to the hours of labor with relation to the health and wel *318 fare of employes.” (The italics in this and following paragraphs are ours.)
Sections 15 and 16 are as follows:
“Section 15. Every employer shall furnish employment which shall be safe for the employes therein, and shall furnish a place of employment which shall be safe for the employes therein, and for frequenters thereof, and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes, follow and obey orders and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employes and frequenters.
“Section 16. No employer shall require, permit or suffer any employe to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe, and no employer shall fail or neglect to do every other thing reasonably necessary to protect the life, health, safety and welfare of such employes or frequenters; and no such employer or other person shall hereafter construct or occupy or maintain any place of employment that is not safe.”
Then by Section 21 the commission is vested with the power and jurisdiction to have such supervision of every employment and place of employment and of every other building and establishment *319 in this state as may be necessary adequately to enforce and administer all laws and all lawful orders requiring such employment and place of employment or building or establishment, to be safe, and requiring the protection of the life, health, safety and welfare of every employe in such employment or place of employment, and every frequenter of such place of employment, including the power to regulate the hours of labor of employes in such employments and places of employment, with regard to the health and welfare of such employes. By Section 22 it is given full power to investigate every employment and place of employment and make and enforce every reasonable, general and special order necessary to bring about and maintain safety in accordance with the manner provided in the act.
These provisions were necessary to meet the new and ever-varying industrial conditions above pointed out. They are thus enabled to bring about a reduction of the number of accidents and preserve the safety of employes. If results in a particular instance require, the commission can increase the premiums to be paid by the employer,, and can prescribe means and methods of increased safety and caution, for the violation of which the employer is liable to an injured employe. Section 25 provides that all orders of the commission in conformity with law shall be in force and shall be prima facie reasonable and lawful until set aside in an action brought for that purpose under Section 41 of the act, or until altered by the commission. Section 18 requires every employer to furnish the *320 commission with full information and answers to all questions submitted by the commission touching matters connected with the provisions of the act. Paragraph 7 of Section 13 provides that the term “order” shall mean and include any decision, rule, regulation, direction, “requirement,” or standard of the commission, or any other determination arrived at or decision made by such commission.
When the provisions of Sections 13, 15, 16, 18, 21, 22 and 25 are considered together in the light of the declared purpose of the enactment creating the industrial commission, we think it clear that the purpose and the effect of Sections 15 and 16 was to bring all employers within the scope of the jurisdiction and authority of the commission, and to impose upon them the obligation to comply with the orders and requirements of the commission when duly made. Section 15 contains the express provision that “Every employer shall * * * follow and obey orders,” etc., and Section 16 provides that “No employer shall * * * fail to obey and follow orders.”
An employer might well have claimed that without the provisions of Sections 15 and 16 there was no affirmative obligation resting on him to comply with any other order of the commission than one which should require him to conform to the proyisions of statutes or ordinances which specifically define things and duties to be performed.
Having by the cognate sections of the statute conferred upon the commission the power to make the inquiries, investigations and orders referred to with reference to safe exployment, Sections 15 and *321 16 impose the liability on employers to observe such orders. Such an order, by the provisions of Section 25, becomes a lawful requirement, for the violation of which the employer, under the proviso contained in Section 29 of the Workmen’s Compensation Act, and under Section 35 of Article II of the Constitution, would be liable to the employe if injured by reason of such violation.
The very fact that the legislature provided by Section 25 that an ordér (which by paragraph 7 means requirement) of the commission shall be lawful is sufficient of itself to show the legislative intent. The expression in Section 25, of this definite means of declaring a lawful requirement, excludes the view that the general, provisions in question were to be so construed. Expressio unius est exclusio alterius. Otherwise how vain, misleading and hurtful the explicit and careful provisions of Section 25 and Sections 21 and 22 would be!
The commission might through its authorized officials visit an industrial plant and after thorough inspection and investigation make an order requiring certain specific precautions to be taken and safeguards to be provided, all of which it is expressly empowered and directed to do by the terms of the act here involved, yet if an injury was sustained by an employe, after the employer had fully complied with the order, and had incurred expenses, arranged his plant and conducted his business with reference thereto, the injured employe could assert in an action against him that the precaution ordered by the commission was not reason *322 able and safe and did not meet the requirements of Sections 15 and 16; that in fact his action had no relation to any order of the commission because his right of action rested upon the general terms of those sections to be determined as at common law. The employer would, in such case, be put upon his defense exactly as if the old common-law rule and the antiquated and unsatisfactory methods of dealing with accidents in industrial pursuits still prevailed, and as if no law had been passed and no effort made by the state to respond to the sentiment of the people, created by long and harsh experiences, that a more humane and satisfactory system should be erected. On the other hand, if the construction we have indicated be correct, then, when an order of the commission has been made and complied with, the injured workman will receive at once the compensation provided by the law out of the insurance fund. This could result only in doing justice between the parties, becaüse if the employer has complied with the orders of an impartial official commission, after having posted notice to the employe that he was proceeding under the law and subject to the commission’s order, he has done all that in justice should be required. But if he has failed to obey the order or requirement of the commission, made under these general provisions, or has failed to comply with the requirements of .any statute or ordinance defining safety devices or safeguards required to be used, he is by that act guilty of negligence per se and liable to the injured workman as provided in the act. The Variety Iron & Steel Works Co. v. Poak, 89 Ohio *323 St, 297; C., H. & D. Rd. Co. v. Van Horne, 69 Fed. Rep., 139, and Narramore v. C., C., C. & St. L. Ry. Co., 96 Fed. Rep., 298.
It is significant that none of the many statutes which specifically define safety appliances and require their use were repealed when the Industrial Commission Act was passed. They would be superfluous under the construction of Sections 15 and 16 contended for here.
In the Poak case, and others above cited, the act which constituted the cause of action was the failure to do the specific thing laid down. The method of safety was not left open to be determined after the injury, but was fixed and known before the injury. Under the construction urged here the whole- question as to what constitutes a compliance with the requirement of safety would be left open to be determined after an injury, with all of the annoyances, delays, hostile relations and unsatisfactory results against which the state has sought to protect employes and employers by the enactment of the compensation law and the administration of the beneficent scheme which it provides. Moreover, the provisions of Section 43 make the law criminal in its nature. That section recites that “if any employer, employe or other person shall violate any provision of this act * * * or fail, neglect or refuse to obey any lawful order given or made by the commission * * * for each such violation, failure or refusal such employer or other person shall be fined not less than fifty dollars nor more than one thousand dollars for the first offense and not less than one hundred *324 nor- more than five thousand dollars for each subsequent offense.”
If the proper construction of Sections 15 and 16 is as urged, not only would the civil liabilities be asserted and determined as contended for in this case, but it would be the duty of the prosecuting attorneys to enforce the penal section; and all notwithstanding, and in utter disregard of, any action of the industrial commission in any given case. Full compliance by a defendant employer with the orders and requirements of the commission, which it is authorized by the statute to make and prescribe, would be no defense.
To the contention that an employer who has complied with the compensation law is entitled to some protection against suits for negligence as under the common law, in consideration for the premiums paid by him into the insurance fund, counsel for defendant in error reply that by the Ohio constitutional amendment the legislature was not obliged to take away any right of action — it was simply empowered to do so. This is true, but it is also true that the legislature was by the amendment not obliged to pass a compulsory law compelling employers to contribute to the fund for the benefit of employes. The same sentence and the same permissive phrase which granted the power to compel employers to contribute also granted the power “to take away any and all rights of action.” It is thus disclosed that there was contemplated one complete beneficial industrial scheme intended to result to the mutual advantage of employers and employes and thereby advance the general good of *325 society, while at the same time keeping in mind and safeguarding the rights and securing the protection of the lives, health and safety of employes by the exception contained in the amendment.
We are convinced the term “lawful requirement,” as used in the constitutional amendment and the statutory provisions involved in this case, was not intended to and does not mean a general course of conduct, or those general duties and obligations of care and caution which flow from the relation of employer and employe, and which rest upon each member of the community for the protection of the others.
It is a well-settled rule in the construction of statutes that where possible such construction will be given as will not render them unconstitutional. In this case if the construction contended for should be held to be correct, we would encounter the question whether our statutes were thereby rendered invalid, as being in violation of - the Federal Constitution, because of the taking of the property of the employer, by compelling him to contribute to the state insurance fund, in violation of the 14th Amendment to the Federal Constitution.
In Matter of Jensen v. Southern Pacific Co., 215 N. Y., 514, the constitutionality of the compulsory workmen’s compensation law of that state was attacked. The law was passed after the constitution of New York had been amended, effective January 1, 1914. In the opinion, at page 523, the court say:
“We now come to perhaps the most important question in the case. Does the act violate the Fourteenth Amendment to the Constitution of the *326 United States for taking property without due process of law?
“Much reliance is placed on the decision of this court in Ives v. South Buffalo Ry. Co. (201 N. Y. 271) 1 * * * It is urged that the reasons which constrained the court to declare the act involved in the Ives case unconstitutional are equally cogent when applied to the Fourteenth Amendment. In the first place it is to be observed that the two acts are essentially and fundamentally different. That involved in the Ives case made the employer liable in a suit for damages though without even imputable fault and regardless of the fault of the injured employee short of serious and willful misconduct. This act protects both employer and employee, the former from wasteful suits and extravagant verdicts, the latter from the expense, uncertainties and delays of litigation in all cases and from the certainty of defeat if unable to establish a case of actionable negligence. * * *
“Moreover, upon the' question whether an act offends against the Constitution of the United States the decisions of the United States Supreme Court are controlling. * * * In this case the mutual benefits are direct. Granted, that employers are compelled to insure and that there is in that sense a taking. They insure themselves and their employees from loss, not others. The payment of the required premiums exempts them from further liability. * * *
“A point was made on oral argument that the act was unconstitutional for depriving an employee injured by negligence imputable to the employer of *327 a right of action for the wrong. Of course, the employer cannot be heard to urge the grievance of the employee * * * but exemption from further liability upon paying the required premium into the state fund is an essential element of the scheme, and if the act be unconstitutional as to the employee the employer would be deprived of that exemption and thus would be directly affected by the unconstitutionality of the act in that respect. It is not accurate to say that the employee is deprived of all remedy for a wrongful injury. He is given a remedy. To be sure, the compensation or recovery is limited, and that in a sense may possibly constitute a taking; but if so, it is his contribution to an insurance scheme designed for his benefit, and may be justified on precisely the same grounds as the contribution exacted of the employer has been. When he enters into the contract of employment, he is now assured of a definite compensation for an accidental injury occurring with or without fault imputable to the employer and is afforded a remedy, which is prompt, certain and inexpensive. In return for those benefits he is required to give up the doubtful privilege of having a jury assess his damages, a considerable part of which, if recovered at all after long delay, must go to pay expenses and lawyers’ fees.
“Moreover, the act does not deal with intentional wrongs but only with accidental injuries, and no account is taken of the presence or absence of negligence attributable to the employer.”
The constitutionality of the same New York law was recently upheld by the supreme court of the *328 United States in New York Central Rd. Co. v. White, 243 U. S., 188, decided March 6, 1917. In its opinion the court summarize the provisions of the New York statute and say at page 194: “By section SO, each employer is required to secure compensation to his employees in one of the following ways: (1) by insuring and keeping insured the payment of such compensation in the state fund; or (2) through any stock corporation or mutual association authorized to transact the business of workmen’s compensation insurance in the State; or (3) ‘By furnishing satisfactory proof to the commission of his financial ability to pay such compensation for himself, in which case the commission may, in its discretion, require the deposit with the commission of securities of the kind prescribed in section 13 of the insurance law, in an amount to be determined by the commission, to secure his liability to pay the compensation provided in this chapter.’ If an employer fails to comply with this section, he is made liable to a penalty in an amount .equal to the pro rata premium that would have been payable for insurance in the state fund during the period of noncompliance; besides which, his injured employees or their dependents are at liberty to maintain an action for damages in the courts, as prescribed by section 11.”
These provisions are similar to those in the Ohio law.
The court further say at page 196: “The scheme of the act is so wide a departure from common-law standards respecting the responsibility of employer to employee that doubts naturally *329 have been raised respecting its constitutional validity. The ádverse considerations urged or suggested in this case and in kindred cases submitted at the same time are: (a) that the employer’s property is taken without due process of law, because he is subjected to a liability for compensation without regard to any neglect or default on his part or on the part of any other person for whom he is responsible, and in spite of the fact that the injury may be solely attributable to the fault of the employee; (b) that the employee’s rights are interfered with, in that he is prevented from having compensation for injuries arising from the employer’s fault commensurate with the damages actually sustained, and is limited to the measure of compensation prescribed by the act; and (c) that both employer and employee are deprived of their liberty to acquire property by being prevented from making such agreement as they choose respecting the terms of the employment. * * *
“In considering the constitutional question, it is necessary to view the matter from the standpoint of the employee as well as from that of the employer. For, while plaintiff in error is an employer, and cannot succeed without showing that its rights as such are infringed * * * [citing cases] yet, as pointed out by the court of appeals in the Jensen Case, 215 N. Y. 526, the exemption from further liability is an essential part of the scheme, so that the statute if invalid as against the employee is invalid against the employer(Italics ours.)
On March 6, 1917, the same day on which New *330 York Central Rd. Co. v. White, supra, was decided, the United States supreme court also decided the case of Mountain Timber Co. v. State of Washington, Id., 219. In that case the court likewise summarize the provisions of the statute of the state of Washington, point out that a state fund is maintained by compulsory compensation from employers, and state that the plaintiff in error is raising objections to the act, based upon the constitution of the United States.
In considering these objections, the court say at page 233:
“From this recital it will be clear that the fundamental purpose of the act is to abolish private rights of action for damages to employees in the hazardous industries (and in any other industry at the option of employer and employees), and to substitute a system of compensation to injured workmen and their dependents out of a public fund established and maintained by contributions required to be made by the employers in proportion to the hazard of each class of occupation.
“While plaintiff in error is an employer, and cannot succeed without showing that its constitutional rights as employer are infringed * * * [citing cases], yet it is evident that the employer’s exemption from liability to private action is an essential part of the legislative scheme and the quid pro quo for the burdens imposed upon him, so that if the act is not valid as against employees it is not valid as against employers.’’ (Italics ours.)
Those decisions are directly applicable to the Ohio compensation law.
*331 Of course they do not apply to a compensation law which is not compulsory but is elective or optional. For example the Wisconsin law is elective. The employer has the option not to operate under it, and the Wisconsin decisions have no application that we can see to the question here involved. But it is to be noted that by the elective law of that state, Section 2394-3, it is provided that where the parties are subject to its provisions the right of recovery of compensation pursuant to its provisions shall be the exclusive remedy against the employer, and that his liability for compensation provided for is “in lieu of any other liability whatsoever.”
Ohio was among the first of the states to make the effort, now generally participated in by the states and the national government, to provide a workable plan which should compensate injured workmen in accordance with humane and scientific principles, and offer escape from the evils which were enmeshed in worn-out, mischievous and wasteful methods so long in use.
It seems inconceivable that the framers of the amendment, Section 35, Article II, used the term “lawful requirement” in a sense that would render the statute passed pursuant to it invalid.
The amendment to the Constitution, Section 35, Article II, was adopted, and the Workmen’s Compensation law and the Industrial Commission act were passed, all within a brief period.
Viewed together, and following rules of interpretation which are familiar, and which have been strengthened and sanctioned by long experience, they present a consistent and admirable structure, *332 a plan for the creation of a fund and the distribution of its benefits, in full harmony with the State and Federal Constitutions, and with sane and just provisions for safeguarding the rights of parties in accordance with the letter and the spirit of the amendment; and, finally, provide an administrative agency with plenary power to supervise the industries of the state, to the end that the praiseworthy objects of the people .may be attained.
For the reasons given the judgment will be reversed.

Judgment reversed.

Nichols, C. J., Newman, Jones and Matthias, JJ., concur.