Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of MARY RIEDEL and Minor Dependents, Respondents, for Compensation under the Workmen's Compensation Law, for the Death of CHARLES RIEDEL, *v.* MALLORY STEAMSHIP COMPANY, Employer, and THE TRAVELERS INSURANCE COMPANY, Insurance Carrier, Appellants.

Third Department, May 4, 1921.

**Workmen's Compensation Law — admiralty and maritime contracts — test of jurisdiction — watchman on pier not engaged in work of maritime nature.**

The jurisdiction of the State Industrial Commission over a claim for an award does not depend upon whether the facts would justify a recovery in an admiralty court, but whether the facts on which the claim is based are maritime.

The State Industrial Commission has jurisdiction to make an award for the death on a pier in the North river of a watchman who was employed by a steamship company and whose duties were to see that none of the vessels or lighters along the pier were approached, to protect them from the

longshoremen, and, in case of fire, to send out an alarm, and to watch the pier and goods thereon, but whose duties did not require him to watch any cargo on the ships or to go on any ship or lighter.

APPEAL by the defendants, Mallory Steamship Company and another, from a decision and award of the State Industrial Commission, entered in the office of said Commission on the 20th day of October, 1920.

*Benjamin C. Loder* [*E. C. Sherwood* and *William B. Davis* of counsel], for the appellants.

*Charles D. Newton, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondents.

VAN KIRK, J.:

An award upon this claim was made in 1916, an appeal taken, and the award was unanimously affirmed in the Appellate Division (176 App. Div. 923), disposing of all of the questions in the case, except that of jurisdiction. When the case of *Knickerbocker Ice Co. v. Stewart* (253 U. S. 149) was decided in May, 1920, an application was made to the State Industrial Commission to reopen the claim, the employer and the insurance carrier maintaining that it was a matter within maritime jurisdiction. The Commission has reaffirmed its former award, holding that the claim is not within maritime jurisdiction, but is within that of the State Industrial Commission.

The facts, so far as necessary upon this appeal, are as follows: The deceased, Charles Riedel, was a watchman on pier 38, North river, in the employ of the Mallory Steamship Company, a Maine corporation, whose ships were engaged in the coast-wise trade. Pier 38 was an open or uncovered pier, the outer end of which was being extended, or repaired, at the time of the death. The deceased fell from the pier and was drowned. There is no definite proof showing the work the deceased was hired to perform, but the duties of a watchman, such as he, generally were to see that any of the vessels or lighters along the pier were not approached, to protect them from the longshoremen, and, in case of fire, to send out an alarm, to watch the pier and goods thereon. He was not to watch any cargo upon the ships, or to go upon the ships. He had no duty whatever upon the ships and was not subject to the orders of any officer of any ship at the

dock. It does not appear whether or not there was any ship at this pier on the night of his death. Indeed, the record contains very scanty information as to the duties of the deceased and what property, other than the pier itself and repair material, were to be watched by deceased. It is explained that, because a long time elapsed between the drowning and the hearing on the claim, it was not possible to secure much proof.

It is now settled that Congress and the Federal courts have exclusive jurisdiction in admiralty. This is not only jurisdiction to determine actions arising in admiralty, but also to determine, within the limits of admiralty affairs, what shall constitute a liability, and no further liability can exist, or penalty be imposed, than such as Congress, or the general maritime law, fixes or imposes. In the absence of a rule of maritime law, or an act of Congress, one engaged in maritime affairs is free from liability; and a State Legislature, or a State court, cannot add a new liability or a new cause for relief. (*Southern Pacific Co. v. Jensen,* 244 U. S. 205; *Knickerbocker Ice Co. v. Stewart,* 253 id. 149; *Butler v. Boston Steamship Co.,* 130 id. 527; *Chelentis v. Luckenbach S. S. Co.,* 247 id. 372; *The Lottawanna,* 21 Wall. 558, 574, 575.) The jurisdiction of the State Industrial Commission over a claim for an award does not depend upon whether the facts would justify a recovery in an admiralty court, but whether the facts on which the claim is based are maritime. An action in admiralty by an employee against his employer for personal injuries suffered on navigable waters is grounded in negligence; still, though no negligence exists, the State Industrial Commission has not jurisdiction of a claim by such employee for compensation. (*Matter of Winfield v. N. Y. C. & H. R. R. R. Co.,* 216 N. Y. 284; revd., 244 U. S. 147.) This was the case of an employee in interstate commerce, but the principle involved is the same, and the rule laid down in admiralty cases is the same. (Cases *supra.*) Jurisdiction in admiralty in tort cases depends entirely upon the *locus,* which must be, in this country, upon navigable waters; in England, upon the high seas, or where the tide ebbs and flows. (*Atlantic Transport Co. v. Imbrovek,* 234 U. S. 52, 59; *Insurance Co. v. Dunham,* 11 Wall. 1.) Personal injury cases arising upon

a dock, though the employee is engaged in maritime business, are not within admiralty jurisdiction. But it is held that awards in compensation cases are based upon contractual relations, and the rule as to jurisdiction is not that which obtains in tort cases. In contract cases admiralty jurisdiction depends upon the nature and character of the contract, " whether it was a maritime contract, having reference to maritime service or maritime transactions," and maritime services and transactions are such as are to be rendered or performed upon the high seas or navigable waters, or directly connected with navigation on navigable waters. (*Atlantic Transport Co.* v. *Imbrovek, supra,* 60, 62; *Sullivan* v. *Hudson Navigation Co.,* 182 App. Div. 152; *Insurance Co.* v. *Dunham,* 11 Wall. 1, 26; *New Jersey Steam Navigation Co.* v. *Merchants' Bank,* 6 How. [U. S.] 344; and cases cited *infra.*)

The services contracted for in this case were not generally maritime in character. The deceased was to watch any goods which might be delivered at the pier to be loaded on ships. We are not informed that any goods were on the dock, but, if there were goods there, we are not informed that delivery had been made. If not delivered, an action concerning them would not come within admiralty jurisdiction. In *O'Brien* v. *Pennsylvania R. R. Co.* (187 App. Div. 839) the question was whether the employee was engaged in interstate commerce. The goods had been brought in by the Pennsylvania Railroad Company, and deposited at the dock. The consignee was entitled to forty-eight hours' notice before removing the consignment. This period not having elapsed since the goods were deposited, it was held that the shipment was not complete, and that the employee was still engaged in interstate commerce.

Also the deceased was to watch goods delivered on the dock from ships. Any goods that were placed on the pier from a ship had been delivered and were no longer cargo goods. It is the general rule that delivery on the wharf in the case of goods transported by ships is a completed delivery, if due notice be given to the consignee and he has free access to them. An actual delivery of goods so transported into the possession of the owner or consignee or at his warehouse, is not required in order to discharge the carrier from his liability.

(*The Eddy*, 5 Wall. 481, 496.) If there were such goods upon the pier and delivery thereof had been completed, an action concerning them could not be maintained in an admiralty court. Where the contract is maritime in part only and adjudication of non-maritime matter is required, it is not within the jurisdiction of admiralty. (*Grant* v. *Poillon*, 20 How. [U. S.] 162.) The whole contract must be maritime; it is not sufficient that it is maritime in part. (*The Pennsylvania*, 154 Fed. Rep. 9.) In *Pacific Surety Co.* v. *Leatham & Smith T. & W. Co.* (151 Fed. Rep. 440) many cases on this subject are cited. A bond had been given by the charterer of a vessel to secure his performance of the conditions of the charter party, which neither required nor authorized the surety to perform such contract in case of the default of the principal, but merely to respond in damages for its breach. The surety's contract is not a maritime contract. The court says: " That the charter party was a maritime contract and the undertaking of the charterer was for maritime service and transactions is unquestionable." (Citing authorities.) " The appellant, however, as surety on the bond, was no party to the maritime undertaking; neither promised performance of the charter service, nor was authorized under the contract terms to perform." " The obligation of the appellant as surety on the bond was not for performance of the charter party, but for the payment of damages in the event of non-performance on the part of the charterer." (P. 441.) " The rule of strict limitation is uniformly recognized and generally applied in the admiralty courts." (P. 442.) " A mortgage of a vessel, ' whether made to secure the purchase money upon the sale thereof, or to raise money for general purposes, is not a maritime contract.' (*The J. E. Rumbell*, 148 U. S. 1.)" " Neither a contract for building a vessel nor one for furnishing materials therefor is a maritime contract. (*Edwards* v. *Elliott*, 21 Wall. 532, 554.) The fact that the vessel is launched when materials were furnished does not make the contract therefor maritime." " Under the harmonious line of authorities referred to the doctrine is settled that the contract articulated in a libel must be, directly and in essence, an obligation maritime in its nature, for the performance of maritime service or transactions, to confer

jurisdiction." (P. 443.) A contract had been made near the close of the season of lake navigation for the shipment of a cargo of grain from Chicago to Buffalo, the grain to be stored in the vessel at Buffalo until the following spring. Held, that this was not maritime in character in respect to the provision for such storage; and admiralty has no jurisdiction of a suit for damage to the grain during the storage. (*The Richard Winslow*, 71 Fed. Rep. 426.) In *The Sirius* (65 Fed. Rep. 226) it was held that the services rendered by a watchman employed to care for and clean the machinery and maintain a general care and supervision of a vessel lying at her home port, out of commission, and with no voyage in contemplation, is not maritime. On page 228 the court quotes, saying: " The subject-matter of the contract — the substantial object and end — must pertain to navigation, or be connected with transactions performed by vessels on the sea, to become maritime in its nature, and be clothed with the privilege of a remedy in admiralty courts; and it appears to me that an agreement acquires this maritime quality only when the matters performed or entered upon under it pertain to the fitment of a vessel for navigation, aid and relief supplied her in preparing for and conducting a voyage, or the freighting or employment of her as an instrument of a voyage. Collateral contracts with or assistance by services or advances to an owner or master, incidentally benefiting a voyage, acquire no special property thereby which renders them maritime. * * * The line of discrimination between cases which are maritime in their nature and those not so is exceedingly dim and vague, and in the contested state of admiralty jurisdiction in respect to these border subjects it is most desirable to keep within the limits of the clear powers of the court. Manifestly, not every contract in relation to maritime matters falls within the cognizance of maritime courts, and, without attempting to define with strictness the terms within which the jurisdiction of admiralty courts is circumscribed, it may be safely asserted that, to impart a maritime character to a subject relating to personal services in vessels, it must be connected with the reparation or betterment of the vessel, or be rendered in aid of her navigation, directly by labor on the vessel, or in sustenance and relief of those conducting

her operations at sea." Jurisdiction will not be taken of the claim of one employed to visit a ship at her anchorage, occasionally, to see to her safety, ventilation and pumps. (1 C. J. 1275.)

The contract of employment here was not to be performed concerning a ship during navigation, or in preparation for navigation, or upon navigable waters and involved other than maritime matters. The deceased was simply a watchman; his services were not to be helpful in any matter of navigation. None of his services were directly in maritime matters and an important part of them was not even indirectly connected therewith; and none of them relate to navigation further than to protect a ship, or goods for shipping, during intervals between voyages.

The award should be affirmed.

Award unanimously affirmed.