Before STATE INDUSTRIAL BOARD, Respondent.

In the Matter of the Claim of Mrs. MAJA NORMAN, Respondent, for Compensation under the Workmen's Compensation Law, for the Death of LOUIS NORMAN, *v.* MERRITT & CHAPMAN DERRICK AND WRECKING COMPANY, Employer, and NEW AMSTERDAM CASUALTY COMPANY, Insurance Carrier, Appellants.

Third Department, March 8, 1922.

**Workmen's Compensation Law — admiralty and maritime employment — night watchman killed by falling from gangplank leading from bulkhead to derrick lighter upon which he was employed — lighter moored in New York bay to bulkhead and used in construction thereof but capable of being used for transportation was vessel — decedent was seaman and engaged in maritime employment.**

A scow with a derrick upon it, called a derrick lighter, which had been in navigation as a means of transportation or was capable of it, was a vessel within the meaning of the United States statutes while moored in New York bay to a bulkhead in the construction of which it was being used for the purpose of loading and unloading other boats; it did not lose its character as a vessel because it was not being used in ordinary maritime commerce.

A night watchman on said lighter, having charge also of a piledriver moored nearby, who was killed by falling from a gangplank leading from the bulkhead to the lighter while returning from performing his duties on the piledriver, was a seaman, within the meaning of the statute, and was engaged in maritime employment at the time of his death.

APPEAL by the defendants, Merritt & Chapman Derrick and Wrecking Company and another, from a decision of the State Industrial Board, dated the 2d day of November, 1921, denying an application for a rehearing and confirming an award made the 3d day of February, 1919.

*Frederick Mellor* [*Jeremiah F. Connor* of counsel], for the appellants.

*Charles D. Newton, Attorney-General* [*E. C. Aiken, Deputy Attorney-General*, of counsel], for the respondents.

HINMAN, J.:

An award was made in this case in 1919. An appeal was taken and the award was unanimously affirmed by this court. (190 App. Div. 887.) This court denied a motion to go to the Court of Appeals as did also the Court of Appeals. Compensation was paid to June 6, 1920, when the employer and insurance carrier made application for a rehearing on the ground that the case was one in admiralty under the case of *Knickerbocker Ice Co.* v. *Stewart* (253 U. S. 149), which had been decided subsequent to the award.

The question raised upon the previous appeal related to whether the deceased was in the employ of one company or another. The admiralty question was not raised.

At the time the claimant met his death he was in the general employ of the General Contracting and Engineering Company, which had a contract to build a reinforced concrete bulkhead in New York bay.  This bulkhead was also to be used as a dock.  The Merritt & Chapman Derrick and Wrecking Company was a subcontractor and under its subcontract it was to prepare the bottom of the river for building the foundation and setting the concrete blocks of the bulkhead.

In the construction of this work a derrick lighter or a scow with a derrick upon it, as it was described by one of the witnesses, was used.  This derrick lighter was owned by the General Contracting and Engineering Company, and it and the crew had been turned over and were under the control of the Merritt & Chapman Derrick and Wrecking Company.

One of the crew was Louis Norman, the deceased employee, who was a night watchman on the derrick lighter, and his duties were to look out for the boat and to take care of the boilers.  In taking care of the boilers he kept the fire going so the boilers would not freeze.  In connection with this work a piledriver was used.  Norman also looked after the piledriver.  The derrick lighter and the piledriver were moored to the bulkhead and both were floating in the water.  In order to get from the lighter to the piledriver it was necessary to pass over a gangplank leading from the lighter to the bulkhead, then to pass over the bulkhead and another gangplank leading from the bulkhead to the piledriver.  Just prior to the accident there had been snow and the testimony of one of the witnesses who described the conditions which he found after the accident indicates that Norman made the trip from the derrick lighter to the piledriver and that when he returned and was walking along the gangplank leading from the bulkhead to the derrick lighter he slipped and fell into the waters of the bay, where he met his death.  The Commission has found that he met his death in that way.

Upon the rehearing on the admiralty question, the referee indicated that the award should be sustained under *Riedel* v. *Mallory Steamship Co.* (196 App. Div. 794) and in his memorandum he has indicated the probable theory upon which the Commission has decided that the case was not one in admiralty.  He says: " The craft was moored at New Brighton, S. I., held from the shore by anchors and to the shore by ropes.  At the time of the accident, the decedent, the piledriver and the employing corporation were engaged in preparing the bottom for the construction of a reinforced concrete bulkhead, in other words, a retaining wall to hold the back-fill and protect it from the wash of the sea.  This preparatory to the

construction of a large warehouse and dock. It will hardly be contended that the construction of a warehouse is maritime in its nature. It has been repeatedly held that the building of a dock is not a maritime pursuit."

I am unable to agree with his conclusion based upon this theory. It overlooks the fact that the scow or lighter upon which Norman was employed and to which he was returning when he slipped from a gangplank which lead to it, was a vessel. " The word ' vessel ' includes every   *   *   *   water-craft or other artificial contrivance used, or capable of being used, as a means of transportation on water." (U. S. R. S. § 3.) And " every person (apprentices excepted) who shall be employed or engaged to serve in any capacity on board the same shall be deemed and taken to be a ' seaman.' " (U. S. R. S. tit. 53, § 4612, as amd. by 30 U. S. Stat. at Large, 762, chap. 28, § 23, and 38 id. 1168, chap. 153, § 10; *Leary Const. Co.* v. *Matson,* 272 Fed. Rep. 461; 1 C. J. 1264.)

The controlling consideration in this case is that Norman's services had immediate connection with the vessel itself. " What he did in the course of his employment might and could result in either safety or injury to the ship or cargo." (*Matter of Newham* v. *Chile Exploration Co.,* 232 N. Y. 37, 41.)

In *Ellis* v. *United States* (206 U. S. 246) it was held that all employees on scows were " seamen " and, therefore, were not laborers and mechanics within the provisions of the Federal Eight-hour Law of 1892 (27 U. S. Stat. at Large, 340, chap. 352), notwithstanding the fact that in the correlated cases reported with that case it was strongly urged by Mr. Justice Moody, dissenting, that the men who were engaged in the work of excavation on the scows or dredges had nothing whatever to do with navigation.

*Matter of Eastern Dredging Co.* (138 Fed. Rep. 942) involved a scow employed in carrying mud. In that case, construing section 4283 of the United States Revised Statutes and the provisions of the act of 1886 (24 U. S. Stat. at Large, 80, § 4, amdg. U. S. R. S. § 4289), the court said: " There is no expression in the act, as it now stands, to indicate that the nature of the employment in which a vessel is engaged is to be considered in determining whether or not the act is to apply to her. That question is made to depend entirely upon the waters whereon she is used. The waters whereon the petition alleges this scow to have been used are unquestionably waters within the admiralty jurisdiction, and, having held her to be a vessel within the meaning of the act, I am unable to regard the nature of her employment as in any way material." (p. 945.)

A case quite parallel to that before us is *The Sunbeam* (195

Fed. Rep. 468). It appears that the *Sunbeam* was a scow, built for carrying stone. It carried a derrick. The vessel had been engaged in carrying stone about the harbor of New York, unloading the same at places where sea walls were being built and riprap work was being done. " She had not carried cargo for three years but was capable of doing so, and at the time in question was anchored in the harbor of New York, about 300 feet from the shore at Bay Ridge." Apparently the scow was being employed in some harbor work for the city of New York and an inspector of that city was injured by being struck by a stone which was being handled by the derrick of the *Sunbeam*. It was held that the owners of the scow could limit their liability under the statute of 1886, " which relates to all vessels by whatever name they may be known," the court saying: " It includes barges, canal boats, scows and lighters."

The scow upon which Norman worked was a " vessel " and he was a " seaman " within the statutory definitions. The scow had been in navigation as a means of transportation, or at least was capable of it, and it was at the time floating in waters unquestionably within the admiralty jurisdiction. If at the time she were not carrying cargo that would not render her any the less a vessel within the act. She was " capable of being used as a means of transportation on water," within the meaning of the statute. She was, in fact, carrying a derrick at the time and perhaps was carrying mud or stone or both. She was none the less a vessel even though not carrying merchandise or engaged in ordinary maritime commerce. That was changed and broadened by the amendment of 1886. (*Matter of Eastern Dredging Co., supra.*)

To carry the argument to another very logical conclusion the derrick lighter or scow, as she has been variously called, was engaged in loading, transporting and unloading concrete blocks as she floated upon the water. These blocks may have been brought there upon her own deck and unloaded therefrom. They may have been brought there by another vessel from whose deck the derrick lighter unloaded them. In either case, there could be no question as to the function being performed by her. She was just as much engaged in a maritime employment as a stevedore or longshoreman. If the concrete blocks were upon the land and were lifted out over the water by her derrick and dropped into place, did she not constitute in similar manner " a means of transportation on water " and was she not being used as such at the time? The distance traveled did not affect the question. What difference did it make whether the vessel itself moved or whether, as it floated upon navigable waters as a vessel, it reached out its own arm and

transported the freight from one place to another? I can see no distinction in principle. It constituted the function of loading, transporting and unloading by means of a vessel. I have used this illustration for the purpose of distinguishing, if necessary, the function of a derrick lighter from that of a piledriver. Whatever reasoning may possibly save the decision of this court in the pile-driver case of *Grollman* v. *Spooner & Son, Inc.* (199 App. Div. 946), that reasoning cannot save this case from the rule of *Southern Pacific Co.* v. *Jensen* (244 U. S. 218); *Matter of Newham* v. *Chile Exploration Co.* (232 N. Y. 37); *Matter of Reinhardt* v. *Newport F. S. Corp.* (Id. 115); *Matter of Doey* v. *Howland Co.* (224 id. 30); *Matter of Anderson* v. *Johnson Lighterage Co.* (Id. 539); *Matter of Keator* v. *Rock Plaster Mfg. Co.* (Id. 540); *Matter of Mangieri* v. *Stephens, Inc.* (232 id. 596).

The *Riedel Case* (196 App. Div. 794) does not reach this case. There the deceased " had no duty whatever upon the ships and was not subject to the orders of any officer of any ship at the dock " (p. 795), and moreover the place of his accident was not such as to establish jurisdiction of the admiralty courts in an action of tort, whereas in the case here the deceased fell from a gangplank while entering the vessel, bringing it within the situation covered in the *Jensen Case (supra)*.

The award should be reversed and the claim for compensation dismissed.

All concur.

Award reversed and claim dismissed, with costs.