## LERMOND'S CASE.

### Sagadahoc.    Opinion March 12, 1923.

*An accident to an employee on a steamship caused by the slipping of a ladder down which he was going from the deck to the wharf, resulting in injury by striking either the wharf or a bumper log maintained in front of the wharf, to prevent impact, or both, is within the jurisdiction of the State Court, and admiralty does not take jurisdiction.*

In the instant case the Associate Legal Member of the Industrial Accident Commission found that the bumper, or dead log, was actually a part of the wharf, and further found that the injury was received upon the bumper log, which was equivalent to finding that the petitioner received his injury by striking upon the wharf.

The bumper log being a part of the wharf the injury was consummated upon the wharf.

To come within the admiralty jurisdiction the wrong and injury complained of must have been committed wholly upon the highways and navigable waters, or at least the substance and consummation of the same must have taken place upon these waters, and the cause of damage must have been there complete.

Where an injury begins upon the ship and culminates upon the land, admiralty does not take jurisdiction, and the case comes within the jurisdiction of the State Court, under the Compensation Act.

On appeal. This is a proceeding by petition for compensation under the Workmen's Compensation Act. On August 29, 1920, the claimant, George P. Lermond, was in the employ of the Texas Steamship Company as a pipe fitter on the ship "Alabama," regularly engaged in interstate commerce. While descending a ladder from the deck to the wharf, the ladder slipped, and he fell into the water, on the way coming in contact with either the wharf, or a bumper log fastened to the wharf by wire cables and there maintained to prevent impact between the wharf and boats, or striking first the wharf and then the bumper log, and sustained severe injury. At a hearing before the Associate Legal Member of the Industrial Accident Commission, it was contended by claimant that the bumper

log was a part of the wharf and the court so found, and further found that the injury was received upon the bumper log, and awarded compensation, and an appeal was taken.    Appeal dimissed.    Decree below affirmed.

The case is fully stated in the opinion.

*Edward W. Bridgham*, for claimant.

*Robert M. Pennell and Strout & Strout*, for respondents.

SITTING:    CORNISH, C. J., SPEAR, PHILBROOK, DUNN, DEASY, JJ.

SPEAR, J.    This case involves a petition for award of compensation filed with the Industrial Accident Commission February 10, 1922, by *George P. Lermond* v. *Texas Steamship Company and U. S. Fidelity and Guaranty Company*.    A hearing was held at Bath, at which all parties in interest were represented.    The Associate Legal Member of the Industrial Accident Commission heard the case and made a statement of facts from which an abbreviated statement of the case would appear to be as follows:

On August 29, 1920, the claimant was employed by the Texas Company as a pipe fitter on the ship "Alabama," regularly engaged in interstate commerce, belonging to the Texas Company, and while so employed sustained a severe injury arising out of his employment. He was going down a ladder from the deck to the wharf below; the ladder slipped and he fell into the water, on the way bruising his left side and breaking his right leg by striking against a bumper log, so called.    The log was seventy or eighty feet long and two feet through at both ends, fastened to the wharf by wire cables. It was permanently attached and had been there for a long time prior to the accident.    Its purpose was to act as buffer, or fender, to protect boats and the wharf from impact.    At high water it would lie close against the wharf; at low water it would swing out the length of the cables, seven and one half feet.    Taking into account the closeness and firmness of its attachment to the wharf, its permanency, and the purpose for which it was used, it is found that this bumper, or dead log, was actually a part of the wharf. At the time of the accident the boat was ten or twelve feet from the wharf, the floor of which was some four feet above the water.    The ladder was perhaps thirty feet long, extending two feet or so above the deck, its foot resting about four feet from the edge of the wharf.

It was not fastened in any way either to the vessel or to the wharf. Claimant was five or six rounds down the ladder—about one quarter way—when it started to slip, due presumably to the swinging out of the boat. A controversy arose as to whether the claimant, in his fall, struck the wharf and then fell upon the bumper log, or whether he struck the bumper log only. Upon this point the Associate Legal Member stated: "It cannot be found that claimant struck the wharf, but rather that he received his injury by striking the bumper, or dead log." This is an affirmative finding that the injury was received upon the bumper log. We have no occasion, therefore, to inquire whether he struck upon the wharf proper or not.

It further appears that, on November 12, 1920, Mr. Lermond signed a settlement receipt and common law release for the sum of $350.00, but this receipt contained no reference to the settlement of an admiralty claim, and, consequently, was not binding upon the claimant unless approved by the Industrial Accident Commission. The Legal Associate so found. Whereupon the following statement and decree were entered. "It is agreed that in addition to the $350. already paid the liability, if any, of the respondent Company as to the injury up to the date of the hearing on March 29, 1922, is $696.50: $662.50 being for loss of time, including whatever amount may be due on account of permanent impairment, and $34. for medical bills.

"IT IS THEREFORE ORDERED AND DECREED that the Texas Steamship Company or its insurance carrier, the U. S. Fidelity & Guaranty Company, pay to George P. Lermond the aforesaid sum of $696.50 on account of the injury sustained by him August 29, 1920, while in the employ of the said Texas Steamship Company."

This decree was affirmed by a Justice of the Supreme Judicial Court from which an appeal was taken to bring the case here.

There is no question but that a contract to do repairs on a vessel engaged in interstate commerce and lying in navigable waters is of a maritime nature. *McClellan* v. *Robert Morris*, 1 Wall. 33; The Iris, 100 Fed. 104. Lermond was so engaged.

It is the opinion of the court, however, that this case turns upon the mixed question of law and fact, whether the bumper log can be regarded as a part of the wharf, it being well settled that an injury to fall within the rules of maritime jurisdiction must end, as well as begin, upon navigable waters. While an award under the Work-

men's Compensation Law is not made on the theory that a tort has been committed, but that the statute giving the Commission power to make an award is read into and becomes a part of the contract of employment, it is nevertheless true that, in order to determine whether admiralty or State jurisdiction controls the form of procedure, the accident from which the injury proceeds is treated in the nature of a tort.

In *State Industrial Commission of the State of New York, Petitioner* v. *Nordenholt Corporation and the Travelers Insurance Company,* U. S. Supreme Court's Advance Opinions, July 1, 1922, the court says: "The general doctrine, that in contract matters admiralty jurisdiction depends upon the nature of the transaction, and in tort matters upon the locality, has been so frequently asserted by this court that it must now be treated as settled."

In 1 R. C. L., 417–19, with reference to jurisdiction of maritime torts, it is said, "In determining whether a tort was committed on land or on water, consideration must be given to the place where the injury and damage arise rather than to the place where the negligent act was committed, or had its inception. It is the locality of the person or thing injured, not that of the offending person or thing, that determines the question. The consummation of the wrong must have taken place, and the cause of action have been completed, upon navigable waters." The leading case upon this subject, to which all the subsequent cases seem to refer and affirm, is found in *The Plymouth,* 3 Wallace, 20. This was a case in which a ship anchored in the Chicago River, navigable water, owing to the negligence of those in charge, took fire and communicated the flames to packing houses and other property along the wharf which was damaged and consumed by the fire. The court, with reference to this case, where the fire originated on the vessel, in navigable waters, and did damage upon the land, said: "but it has been strongly argued that this is a mixed case, the tort having been committed partly on water and partly on land; that as the origin of the wrong was on the water, in other words, as the wrong began on the water, where the admiralty possesses jurisdiction, it shall draw after it all the consequences resulting from that act." In answer to this argument the court said: "This class of cases may well be referred to as illustrating the true meaning of the rule of locality in cases of maritime torts, namely, that the wrong and injury complained of

must have been committed wholly upon the high seas and navigable waters, or, at least, the substance and consummation of the same must have taken place upon those waters to be within the admiralty jurisdiction. In other words, the cause of damage, in technical language, whatever else attended it, must have been there complete . . . . The jurisdiction of the admiralty over maritime torts does not depend upon the wrong having been committed on board the vessel but upon its having been committed upon the high seas, or other navigable waters. . . . The jurisdiction of the admiralty does not depend upon the fact that the injury was inflicted by the vessel, but upon the locality—the high seas or navigable waters—where it occurred. . . . . We. can give, therefore, no particular weight or influence to the consideration that the injury in the present case originated from the negligence of the servants of the respondents on board the vessel except as evidence that it originated on navigable waters—the Chicago river; and as we have seen, the simple fact that it originated there, but, the whole damage done upon land, the cause of action not being complete on navigable waters, affords no grounds for the exercise of the admiralty jurisdiction. The negligence of itself furnishes no cause of action; it is damnum adsque injuria." To the same effect is *Gerry* v. *Insurance Company*, 120 Me., 457.

As we understand the finding of the Associate Legal Member, he decides the present case upon the authority of the Berry case, but the two cases are not exactly parallel. If the claimant had fallen upon the wharf proper the Berry case would be decisive. The State would have jurisdiction. If the accident, beginning on the ship, had culminated in the water without the claimant touching the wharf, admiralty would have had jurisdiction. 3 *Wallace*, supra. In order then to determine which jurisdiction controls, we must revert to the question already suggested,—was the bumper log upon which the complainant was injured a part of the wharf or a part of the navigable water? Upon this question *Cleveland Terminal and Valley Railroad Company* v. *Cleveland Steamship Company*, 208 U. S., 216, seems to give some light. The syllabus states the case as follows: "The admiralty does not have jurisdiction of a claim for damages caused by a vessel to a bridge or dock which, although in navigable waters, is so connected with the shore, that it immediately concerns commerce upon land." In the body of

the opinion reference as to what constitutes the land as distinguished from navigable waters in determining the question of jurisdiction, the court say: "That this is a case for damages to shore, dock, and to bridge protection, piling and pier," and in holding that these instrumentalities of commerce were not within the admiralty rule, conclude as follows: "All the bridges, shore, docks, protection piling, piers, etc., pertain to the land. They were structures connected with the shore and immediately concerned commerce upon the land. None of these structures were aids to navigation in the maritime sense but extensions of shore and aids to commerce on land as such." The bumper log was no aid to navigation in the maritime sense. It was simply a fender to protect the wharf as well as the vessel, not a medium of navigation.

In 8 Words and Phrases, 7434, the word "wharf" is defined as follows: "A wharf is a structure erected on a shore below high water mark . . . To a structure of this description and built for such purposes, floats necessary for the use of such wharf and usually occupied with it, may pass as appurtenant." *Doane* v. *Bradstreet Assn.*, 6 Mass., 332.

As a matter of fact, from the foregoing definitions of a wharf, and appurtenances thereto, it seems clear that the bumper log was a part of the wharf and not a part of the navigable water. It then follows, as a matter of law, that it was not within the scope of admiralty jurisdiction as such jurisdiction applies only to navigable waters.

The finding of the Associate Legal Member was correct as to the character of the bumper log, and upon that finding the case is clearly within the decision of the *Berry case*, 120; Maine, 437.

*Appeal denied.*
*Decree below affirmed.*