## MILLERS' INDEMNITY UNDERWRITERS v. BOUDREAUX et al.    (No. 508–3935.)*

(Commission of Appeals of Texas, Section A. April 23, 1924.)

1. **Admiralty ⬅⟲20—Provisions of Workmen's Compensation Act cannot be made applicable to maritime services.**

Congress cannot, under the federal Constitution, make applicable to persons engaged in maritime service provisions of state Workmen's Compensation Acts.

2. **Admiralty ⬅⟲20—In suit for death of diver, jurisdiction determined by nature of work being done when accident occurred.**

In a suit to set aside an award of the Industrial Accident Board and to recover compensation for death of a diver, the cause of action for death grows out of the contract of employment between parties on theory that Compensation Law of state was read into and became a substantial part thereof and the question of admiralty jurisdiction is determinable by the nature and character of work being done.

3. **Admiralty ⬅⟲10—What constitutes a "maritime contract" stated.**

A "maritime contract" must concern transportation by sea and relate to navigation and maritime employment, and be one of navigation and commerce on navigable waters.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Maritime Contract.]

4. **Admiralty ⬅⟲20—Contract of employment between diver and shipbuilding company held not maritime in nature so as to confer admiralty jurisdiction of an action for his death.**

A contract of employment, under which a diver was working off a floating barge in a navigable stream on ways which were constructed for launching ships and which were a necessary part of the wharf, was not purely maritime in nature, so as to confer exclusive admiralty jurisdiction on a cause of action for his death; and the contract not given an exclusive maritime character because the ways incidentally obstructed navigation.

5. **Admiralty ⬅⟲20 — Compensation Law applicable to maritime work where no direct relation to navigation or maritime commerce.**

Where a diver's employment contract was made subject to the Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.), and the work being done does not have a direct relation to navigation or maritime commerce, though the employment partakes somewhat of a maritime nature, the state court has jurisdiction, and Compensation Law furnishes the exclusive method of procedure for his death.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Suit by E. J. Boudreaux and others against the Millers' Indemnity Underwriters. Judgment for plaintiffs was affirmed by the Court of Civil Appeals (245 S. W. 1025), and defendant brings error. Affirmed.

Morris & Barnes, of Beaumont, for plaintiff in error.

Howth & O'Fiel, of Beaumont, for defendants in error.

GERMAN, P. J. There is only one question of real importance to be decided by this court in this case. This question goes to the jurisdiction of the district court of Orange county to consider and pass upon the merits of the case.

The suit was instituted by defendants in error to set aside the award of the Industrial Accident Board, and to recover compensation for the death of O. O. Boudreaux. Judgment was entered by the district court in favor of Mrs. E. J. Braud, one of the defendants in error, and this judgment was affirmed by the Court of Civil Appeals at Beaumont. 245 S. W. 1025.

At the time of his death Boudreaux was employed as a diver by the National Shipbuilding Company, and was working in the waters of the Sabine river, which is admittedly a navigable stream. There is nothing in the record to disclose the general character of the business of the National Shipbuilding Company, but there is enough from which it is inferred that for one thing it was engaged in the building and launching of ships. Nor are the terms of the contract of employment between the company and Boudreaux shown. At the time of his death Boudreaux was sent down into the water of the Sabine river, in the full equipment of a diver, from a small barge or boat, which had on it a little house or dressing room, pumps, and equip-

ment. This barge, or pontoon, as it is called, had no means of self-propulsion, but was towed about with a skiff. It seems to have had no use except in connection with the diving. As to the particular work being done by Boudreaux, the witness Arrington testified:

"The kind of work he was doing there was diving. As to what his purpose was, well, we were fixing to launch a ship, and he was adjusting some kind of bolts, or sawing off piling, or something. He was working on the ways. Yes, sir; the ways are attached to the soil, the bank of the river. As to whether it is a sort of wharf, it is timbers to launch a ship on, and as it goes in the water, of course it goes deeper. Yes, sir; these ways are constructed by driving piling from the shore out into the river at right angles to the river, and sawing them off so that as they go out from the shore they are inclined. He was working on the piling in the river, which was a part of the ways constructed for launching a ship."

Kerr, who was foreman in charge of the work, testified:

"As to the nature of the work he was doing, it was a set of ways that was formerly used for launching ships and, the National Shipbuilding Company decided to do away with that set of ways, or part of it—a hundred feet of it—in order to extend the wharf, and we were dismantling and cutting out those ways. There was no boat on those ways. The last one had been launched on that set of ways. We were dismantling them in order to extend the wharf so as to dismantle some boats the National Shipbuilding Company had bought. Yes, sir; we were taking those out to get the boats in. Yes, sir; that was an obstruction to navigation, and we were taking the obstruction away."

[1] Boudreaux was working under the water about 35 feet from the bank of the stream. Under this state of facts, plaintiff in error contends that the action is one exclusively cognizable in a court of admiralty, and that therefore the district court of Orange county had no jurisdiction. We have delayed consideration of this case somewhat, waiting for the published report of the decision by the Supreme Court of the United States in the consolidated case of State of Washington v. W. C. Dawson & Co. and Industrial Accident Commission v. James Rolph Co., 44 Sup. Ct. 302, 68 L. Ed. 339. However, this decision merely confirms the prior holding of Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 40 Sup. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145, in holding that Congress cannot, under the federal Constitution, make applicable to persons engaged in maritime service the provisions of state workmen's compensation acts. We are thrown back to the question. of whether or not Boudreaux, at the time of his death, was engaged in maritime service, or was performing work under a strictly maritime contract of employment.

The Supreme Court of the United States has recently said (Grant Smith-Porter Co. v. Rohde, 257 U. S. 469, 42 Sup. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008):

"The general doctrine that in contract matters admiralty jurisdiction depends upon the nature of the transaction and in tort matters upon the locality, has been so frequently asserted by this court that it must now be treated as settled."

[2] The cause of action here is not predicated primarily upon a tort. On the contrary, it grows directly out of the contract of employment between the parties, upon the theory that the Compensation Law of the state is read into and became a substantial part of this contract. The element of wrongdoing does not enter into the question of compensation. It follows, therefore, that the present case must be tested by the principle applicable to contract matters; and the question of admiralty jurisdiction must be determined by the subject-matter of the contract—the nature and character of the work being done. Grant Smith-Porter Ship Co. v. Rohde, 257 U. S. 469, 42 Sup. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008; Post v. Burger et al., 216 N. Y. 544, 111 N. E. 351, Ann. Cas. 1916B, 158; Berry v. Donovan & Sons, 120 Me. 457, 115 Atl. 250, 25 A. L. R. 1021. Perhaps the most appropriate test of determining whether a contract is a maritime one or not is that laid down recently by the federal court in the case of The W. T. Blunt (D. C.) 291 Fed. 901:

"If a contract pertains to maritime service or a maritime transaction, that is, if it has a direct or substantial connection or relation to navigation, it is maritime in nature and may afford a sufficient basis for the jurisdiction of a court of admiralty. On the other hand, if such contract is not so related to navigation, even though it refers to a vessel, for example, if it does not tend to enable or aid a vessel to engage in navigation or otherwise pertain to navigation, it cannot be properly termed a maritime contract nor be enforced in a court of admiralty."

[3] The rule is stated in 1 C. J. 1266, as follows:

"A maritime contract must therefore concern transportation by sea, it must relate to navigation, and to maritime employment; it must be one of navigation and commerce on navigable waters. It is not enough that the service which sprang from the contractual relation be performed on water, or even that it be done on board, and for the benefit of a vessel which is afloat."

[4] Tested by these rules, we have no difficulty whatever in arriving at the conclusion that the contract between Boudreaux and the National Shipbuilding Company (judged by the nature of the work he was doing at the time) was in no sense a purely maritime contract, such as would confer exclusive jurisdiction on a court of admiralty. The work being done by Boudreaux was on the ways constructed for launching ships. The ways are constructed by driving piling from the

bank out into the river, and are simply appurtenant to or a necessary part of the docks or wharf. They are merely a continuation or extension of the land structures which are used in connection with the construction of vessels and their launching; and we think it is conclusive that no contract relating to the construction of a vessel may be said to be a maritime contract until the vessel has actually been launched upon navigable waters. The case of Cleveland Terminal & Valley Railroad Co. v. Cleveland Steamship Co., 208 U. S. 316, 28 Sup. Ct. 414, 52 L. Ed. 508, 13 Ann. Cas. 1215, bears on this question. That was a suit for damages to dock, pier, piling, etc., and in discussing the matter of jurisdiction the court say:

"The bridges, shore docks, protection piling, piers, etc., pertain to the land. They were structures connected with the shore and immediately concerned commerce upon land. None of these structures were aids to navigation in the maritime sense, but extensions of the shore and aids to commerce on land as such."

In the recent case of Southern Lighterage & Wrecking Co. v. United States (D. C.) 284 Fed. 978 (affirmed in 260 U. S. 699, 43 Sup. Ct. 91, 67 L. Ed. 470), it is held that a group of piles in the Mississippi river at the foot of a street in New Orleans, used for the mooring of vessels or to keep them in deep water while unloading, were a land structure and not an aid to navigation, and suit for injury to them was not within admiralty jurisdiction.

These cases, while not direct authority on the question under consideration, clearly demonstrate that a contract with reference to such structures as these, or work being done in connection with them, would not be of a maritime nature. The fact that the ways on which Boudreaux was working may have incidentally been an obstruction to navigation is not sufficient to give to the contract an exclusive maritime character. The foreman Kerr stated that the ways were being removed for the purpose of extending the wharf, and therefore the work being done was really incidental to the work of building or extending the wharf, and a wharf has always been held to be a land structure and intended to facilitate and aid land commerce.

The Lermond Case, by the Supreme Court of Maine, decided March 12, 1923, and reported in 122 Me. 319, 119 Atl. 864, is a case similar to the present one, and in that case the court held that the Workmen's Compensation act applied.

At the most, the contract under consideration here did not go beyond what has been termed "maritime and local in character." As an illustration of what is meant by such a contract, we call attention to the case of Grant Smith-Porter Ship Co. v. Rohde, supra. In that case a carpenter was injured while doing work on an incompleted vessel which had been launched and was lying upon navigable waters. It was held that the general admiralty jurisdiction extended to such a case, but it was also held:

"A shipbuilding company and a carpenter employee, having both accepted and proceeded under a state workmen's compensation statute by making payments to an industrial accident fund, cannot be said to have contracted consciously with each other in contemplation of the general system of admiralty law governing their rights, obligations, and consequent liabilities in case the employee should be accidentally injured while engaged in the work of finishing an incompleted vessel lying on navigable waters within the state."

[5] In the present case it has been held (and we think correctly) that the National Shipbuilding Company was a subscriber under the provisions of the Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.), and the contract between that company and Boudreaux was made subject to that law; and, the action being one not exclusively within admiralty jurisdiction, the provisions of the Compensation Law furnish the exclusive method of procedure.

This rule of giving application to the state Compensation Laws in cases which are maritime but local in character has recently been applied in several cases; and if it be conceded that the employment here partakes somewhat of a maritime nature, yet if the general employment contracted for and the work being done did not have a direct relation to navigation or maritime commerce, then the state court had jurisdiction and the Compensation Law was applicable. State Ind. Com. v. Nordenholt Corp., 259 U. S. 263, 42 Sup. Ct. 473, 66 L. Ed. 933, 25 A. L. R. 1013; Travelers' Ins. Co. v. Bacon, 30 Ga. App. 728, 119 S. E. 458; Zahler v. Department of Labor, 125 Wash. 410, 217 Pac. 55; Berry v. Donovan & Sons, supra; Lermond's Case, supra; Bockhop v. Phœnix Transit Co., 97 N. J. Law, 514, 117 Atl. 624; Los Angeles S. & D. Co. v. Ind. Acc. Com., 57 Cal. App. 352, 207 Pac. 416; Wooley v. Wichert Co., 275 Pa. 167, 118 Atl. 765; Lawton v. Diamond C. & C. Co., 272 Pa. 74, 115 Atl. 886.

We have therefore concluded that if we apply the rule applicable to contract matters, or if we apply the rule with reference to tort matters, in either event the work being done here was not of such an exclusive maritime nature, in view of the fact that the contract clearly did not contemplate any dominant federal rule concerning liability, as to make the case fall exclusively within admiralty jurisdiction so that "application of the local law would work material prejudice to some characteristic feature of the general maritime law."

We have carefully considered the cases relied upon by plaintiff in error, as well as many others. The cases of De Caetano v.

Merritt & Chapman Co., 203 App. Div. 259, 196 N. Y. Supp. 573, and Norman v. Merritt & Chapman Co., 200 App. Div. 360, 193 N. Y. Supp. 195, are easily distinguished from this case and those we have cited. In those cases the persons who lost their lives were each held to be "seamen" engaged in services upon a "vessel," as each of those terms have been defined by federal statutes and decisions. We do not see how it can be seriously contended that in this instance Boudreaux could be considered a "seaman" or engaged in work upon or connected with a vessel.

The other questions raised by plaintiff in error have been fully, and we think very ably, discussed by the Court of Civil Appeals, and in our opinion have been correctly decided. It is therefore unnecessary for us to discuss them at length.

We recommend that the judgment of the Court of Civil Appeals and of the district court be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.